Dempster Mill Mfg. Co. v. First Nat. Bank of Holdrege.

not entitled to recover of defendants, if anything, more than was due from Mrs. Britton to her wards; hence evidence which tended to show the true amount of such indebtedness was competent and material and its exclusion prejudicial to the rights of plaintiffs in error. There was a number of offers of the sort of evidence alluded to, and we will not notice them in detail or refer to them particularly. The exclusion of the evidence was prejudicial error and calls for a reversal of the judgment.

REVERSED AND REMANDED.

DEMPSTER MILL MANUFACTURING COMPANY V. FIRST NATIONAL BANK OF HOLDREGE.

FILED OCTOBER 7, 1896.    No. 6733.

| | |
|---|---|
| 49 | 321 |
| 49 | 94 |
| 51 | 619 |
| 49 | 321 |
| 56 | 589 |
| 49 | 321 |
| f59 | 590 |

1. **Fraudulent Conveyances**: PREFERRING CREDITORS. An insolvent debtor has the right to pay or secure a creditor to the exclusion of others, and the intention to defraud cannot be inferred from the mere fact that such preference was given.

2. **Review**: INSTRUCTIONS. An allegation of error as to the giving of a group of instructions is insufficient, unless all the instructions included in such group are erroneous.

3. **Evidence**: LOST DOCUMENTS. Parol testimony is not admissible to prove the contents of a written document until its absence is accounted for.

ERROR from the district court of Phelps county. Tried below before BEALL, J.

*G. Norberg* and *C. C. Flansburg,* for plaintiff in error.

*Rhea Bros.* and *W. P. Hall, contra.*

NORVAL, J.

On, and for some time prior to, December 18, 1891, J. G. Moore & Co. were engaged in the windmill and

pump business at Holdrege, and on said date they executed a bill of sale to the First National Bank of Holdrege of all the firm property, consisting of the stock on hand, horses, etc., for the expressed consideration of $3,538.94. The bank at once took possession of the property and caused the bill of sale to be recorded. The next day the Dempster Mill Manufacturing Company commenced an action in the county court of Phelps county against said J. G. Moore & Co., and an order of attachment was issued in the case and placed in the hands of the sheriff, who executed the same by levying upon a portion of the property covered by the said bill of sale. The bank thereupon brought replevin against the sheriff for the recovery of the property. Subsequently the attaching creditor was substituted as defendant. From a verdict and judgment in favor of the bank the defendant prosecutes error.

The assignments relied upon for a reversal of the judgment may be classified as follows:

1. The verdict is contrary to the law and the evidence.

2. Erroneous rulings of the court upon the admission and exclusion of testimony.

3. Errors in the instructions.

Under the first head it is argued that the transfer of the property to the bank by Moore & Co. was fraudulent and void as to the creditors of the latter. The evidence introduced by the plaintiff tends to establish that when the bill of sale in question was executed Moore & Co. were indebted to the bank in about $2,600; that the consideration for the transfer of the stock of goods, horses, notes, and accounts was the said indebtedness, $257 paid at the time by the bank to Moore & Co. and the assuming by the bank the following debts of Moore & Co., viz.: Cooper & Cole Bros. for $622.20; Nate Brown in the sum of $59; Bogue & Co. for $89, and W. P. Hall for $6. The said several amounts assumed have been paid by the bank. It was also shown that prior to the sale George W. Updike, the president of the bank, and one Rathburn

made an examination of the stock of goods and the horses and estimated their value at $1,800 or $2,000, and they valued the notes and accounts at $1,345. The evidence is conflicting as to the actual value of the property covered by the bill of sale when the transfer was made; but that on behalf of the bank was sufficient to authorize the jury in finding that the consideration for the purchase was fair and adequate, and that the sale was made in good faith and with no intention on the part of the officers of the bank to defraud the creditors of Moore & Co. If any reliance can be placed upon the testimony of plaintiff's witnesses, the sole purpose of the purchase was to obtain payment of a *bona fide* debt due. That by the transfer other creditors of Moore & Co. were prevented from securing or collecting their claims does not stamp the transaction as fraudulent. A failing debtor has the right to pay or secure a creditor to the exclusion of others, and the intention to defraud will not be inferred from the mere fact that a preference was given. (*First Nat. Bank of Denver v. Lowrey*, 36 Neb., 290; *Jones v. Loree*, 37 Neb., 816; *Kilpatrick-Koch Dry Goods Co. v. McPheely*, 37 Neb., 800; *Farwell v. Wright*, 38 Neb., 451; *Hewitt v. Commercial Banking Co.*, 40 Neb., 820; *Meyer v. Union Bag & Paper Co.*, 41 Neb., 67; *Hunt v. Huffman*, 41 Neb., 249; *Chaffee v. Atlas Lumber Co.*, 43 Neb., 224.)

Complaint is made of the action of the court in giving instructions 4, 6, and 13 requested by the plaintiff below. As no exception was taken to the fourth instruction at the time it was given, error cannot be predicated thereon in this court. (*Omaha Fire Ins. Co. v. Berg*, 44 Neb., 522.) It follows that the other instructions cannot be reviewed, since the record discloses that both in the motion for a new trial and in the petition in error the assignment was to the instructions *en masse*. (*Diers v. Mallon*, 46 Neb., 126; *Kaufmann v. Cooper*, 46 Neb., 645; *McCormal v. Redden*, 46 Neb., 776.)

It appears that one Nate Brown made an invoice of the property at the request of an officer of the bank in De-

cember, 1891, and placed the value at $4,854. The same person was one of the appraisers in this case to determine the valuation of the property for the purpose of fixing the amount of the bond to be given by the plaintiff, and he also testified by deposition on behalf of the defendant that the value of the stock of goods was the same as stated in the inventory mentioned above. The court permitted John Craig, over the objection and exception of the defendant, to testify to the valuation given in the appraisement, and that he had compared the same with the invoice made by Brown, and that the value of the property in this suit was put down in the appraisement at the sum of $4,300, while the same articles were invoiced at $1,380. Manifestly the testimony of the witness Craig was incompetent, and the objection to its introduction should have been sustained. The appraisement was the best evidence to prove its contents, but it was not introduced, nor was any attempt made to lay the foundation for secondary evidence. It is true the appraisement is part of the record, but in not such a sense as to make it part of the proofs upon the trial, unless offered and received as evidence, which, as already stated, was not done. Again, the purpose of the testimony of Craig was to impeach or contradict the defendant's witness Brown upon the question of value, and that, too, without laying any foundation therefor, by calling Brown's attention to the appraisement and giving him an opportunity to explain, if he so desired. The theory of the defendant was that the bill of sale was fraudulent, and testimony was introduced to show that the consideration for the transfer was so grossly below the value of the property as to render the sale void as to creditors of Moore & Co. There being such a decisive conflict in the evidence as to the actual value of the property, the testimony of Craig could not have been otherwise than prejudicial to the defendant, and its admission is error, for which the judgment must be reversed and the cause re-

manded, without considering the other assignments of error based upon the rulings during the trial.

REVERSED AND REMANDED.

RAGAN, C., not sitting.