MARTIN MIKSCH, APPELLANT, V. FRED TASSLER ET AL., APPELLEES.

FILED MARCH 28, 1922. No. 21787.

1. **Appeal: TRIAL DE NOVO.** To entitle plaintiff to findings and decree in his favor in a trial *de novo* in this court, it must appear under the pleadings and from the evidence preserved in the bill of exceptions that the material facts charged in the petition are supported by a fair preponderance of the evidence.

2. **Waters: CONSTRUCTION OF DITCH: INJUNCTION.** In the hearing upon appeal in an equity suit, when it appears from the evidence that an open ditch is being constructed by defendants in, along and following the course of, but deepening and enlarging, the bed in a natural waterway on defendants' lands, the completion of such ditch will not be enjoined, unless it is also clearly shown by the evidence that the water normally contained in and carried by said waterway will thereby be diverted and discharged upon plaintiff's lands, to his damage.

3. **Appeal: TRIAL DE NOVO.** In a trial *de novo* of a suit in equity on appeal, this court, in reaching an independent conclusion without reference to the conclusion reached by the district court, as required by statute, is not precluded from considering and giving some weight to the findings of the trial court, when the record evidence is conflicting or in serious doubt.

APPEAL from the district court for Holt county: ROBERT R. DICKSON, JUDGE. *Affirmed.*

*Doyle, Halligan & Doyle* and *Lewis Chapman,* for appellant.

*J. J. Harrington* and *J. A. Donohoe, contra.*

Heard before MORRISSEY, C. J., ROSE, ALDRICH and FLANSBURG, JJ., BUTTON and COLBY, District Judges.

COLBY, District Judge.

This is a suit in equity brought in the district court for Holt county, wherein appellant, plaintiff in the lower court, is seeking to enjoin the appellees, defendants in the lower court, from constructing an open drainage ditch on the lands of defendants, which ditch would discharge its waters upon the lands of plaintiff.

The plaintiff in his amended and supplemental petition, upon which the action was tried, alleges, in substance, that he is the owner of the northwest quarter of section 3, township 29 north, range 16 west of the sixth principal meridian, in Holt county, Nebraska, about 60 acres being used for farm purposes and the remainder for hay; that defendant Edwin C. Miller is the owner of the south half of said section 3, defendant Guy A. Stone is the owner of the west half of section 10, in said township and range, which is the section south of section 3, and that defendant Fred Tassler is the owner of the northwest quarter of section 15, in said township and range, which land lies south of that owned by defendant Stone; that there is a natural depression, draw or watercourse on said quarter section owned by defendant Tassler beginning at a bridge on the section line west, which discharges the water from Pony lake, the seepage and surface water which collects from rains and the melting snows on a large territory comprising thousands of acres of land lying to the southwest; that said watercourse passes under said bridge across the quarter section of defendant Tassler in a northeasterly direction and continues in that direction until the water therein is discharged into the Elkhorn river.

The plaintiff further sets forth in his petition that defendant Tassler has constructed an open ditch, commencing at a point on the west line of his land in section 15, running thence in a northeasterly direction about 60 rods along the said draw or watercourse, then leaving said watercourse and turning north and northwest; that in digging said ditch said defendant has constructed a bank of earth to prevent the water from following the natural

drainage and watercourse to the east and northeast, thus turning the water north following the ditch so constructed; that the defendants have continued the construction of said ditch north to and across the northern part of Tassler's quarter section onto the land of defendant Stone for a distance of about 40 rods, and that defendant Stone intends to continue the construction of said ditch north across the west half of section 10 to the south line of the lands owned by the defendant Miller, and defendant Miller intends to construct said ditch and continue its construction across his lands in a northeasterly course to the lands owned by plaintiff, which ditch then and there will discharge all its collected waters in a volume upon said land of plaintiff; that the defendants are thus about to concentrate and collect the surface waters in said ditch from a large extent of country and discharge the same through said ditch, contrary to the natural course of drainage, up to and upon plaintiff's land; that defendant C. A. Davison was engaged in the work of constructing said ditch at the commencement of the action and was hired by defendants Tassler, Stone and Miller to construct said ditch across their said lands; that, if defendants are permitted to construct said ditch in the manner and location as aforsaid, said surface water, seepage and the water from Pony lake will be collected and carried onto plaintiff's land in a large and unusual amount in a body; that there is no natural watercourse upon plaintiff's land to carry off said water and the same will spread over and submerge the hay meadows belonging to plaintiff, to his great injury; and plaintiff prays for an injunction restraining the defendants and each of them from constructing said ditch or continuing the same as contemplated.

The defendants filed a joint answer to plaintiff's petition, admitting the ownership of the lands as stated, and admitting that the defendants Tassler and Stone have constructed said open ditch and defendant Miller intends to construct an open ditch connecting with the Tassler and Stone ditch, as alleged in the petition, and that defendant

C. A. Davison was engaged in the work of constructing this ditch at the commencement of the action and was hired by defendants Tassler, Stone and Miller to construct said ditch across said lands, as alleged in said petition. Defendants deny that said ditch is constructed or intended to be constructed otherwise than in the bed or channel of said natural draw or waterway, and that as constructed it will carry said water in said natural waterway across the lands of defendants and through the natural water drain and depression across the land of plaintiff; that the same is continuous from the west side of defendant Tassler's land through the lands of defendants Stone and Miller and also through the land of plaintiff, clear to Moses creek and thence to the Elkhorn river; defendants deny that plaintiff will receive any excessive water by reason of the construction and operation of said ditch; that said ditch has been constructed by defendants and is intended to be constructed by them in the lowest part of said depression and watercourse, so that water may run faster therein, thus increasing the velocity of said water and preventing said water from spreading out over a large acreage of land on both sides of said waterway, where it usually remains for fully half the summer; that by reason of the construction of said ditch the lands of defendants and of plaintiff and all other lands adjoining the same will produce more crops, more grass and a larger amount of hay than such lands would if said ditch were not constructed and maintained, and that it would be detrimental to the country and good husbandry to enjoin the construction of said ditch; and defendants deny each of the other allegations contained in plaintiff's petition, which have not been expressly admitted, and ask that plaintiff's action be dismissed.

The plaintiff filed a reply to defendants' answer, denying generally the allegations contained therein.

Upon the issues made by the petition, answer and reply the case was tried to the district court, which found generally in favor of defendants and against plaintiff, denied

the plaintiff an injunction, and dismissed his petition. From this decision, the plaintiff has appealed.

The real issue in this suit depends on the truth or falsity of the statements contained in plaintiff's petition, that defendants, in constructing said ditch, have diverted the water from the natural depression or waterway in which it is accustomed to flow, commencing at the bridge on the west side of defendant Tassler's land, and that, by reason of said ditch so constructed, large quantities of water will be diverted and carried away from their natural watercourse and drainage to the east and northeast and thrown in a mass or volume onto the land of plaintiff, to his great injury. The contention of defendants is that the natural watercourse and drainage of the Tassler land commences at the bridge, then goes northeast for a distance of about 25 or 30 rods, thence north and west onto the lands of defendant Stone, thence north and east onto the lands of defendant Miller, and then generally northeast onto plaintiff's land, and that the ditch which they so far have constructed and which they intend to construct follows the course of this natural watercourse, depression and drainage and up to and across plaintiff's land, thence to Moses creek and the Elkhorn river.

The point of divergence of the waterway claimed by plaintiff and that claimed by defendants, as it appears in the record, commences on the Tassler land at a point about 25 or 30 rods east of the bridge, the former running in a generally northeasterly direction across the east side of defendant Tassler's land, thence on with various meanderings to the Elkhorn river; that claimed by the defendants runs from such point about due north and then northwest, thence turning northeast across the Stone and Miller lands to, upon and across the land of plaintiff to Moses creek and thence to the Elkhorn river. A number of witnesses testified on behalf of plaintiff, supporting plaintiff's contention, and a large number of witnesses testified on behalf of defendants, giving evidence supporting defendants' contention.

While there is but little controversy as to the law applicable to this case, yet a brief consideration thereof will tend to clarify the issues.

Section 1771, Rev. St. 1913, provides: "Owners of land may drain the same in the general course of the natural drainage by constructing an open ditch or tile drain, discharging the water therefrom into any natural watercourse or into any natural depression or draw, whereby such water may be carried into some natural watercourse; and when such drain or ditch is wholly on the owner's land, he shall not be liable in damages therefor to any person or corporation."

Section 1772 defines what shall constitute a "watercourse," as follows: "Any depression or draw two feet below the surrounding lands and having a continuous outlet to a stream of water or river or brook shall be deemed a watercourse."

This court in several well considered cases has given its interpretation of the requirements of a watercourse and has held that to constitute a watercourse the size or velocity of the stream is not material, but that it must, however, be a stream in fact as distinguished from mere temporary surface drainage occasioned by freshets or other extraordinary causes, although the flow of water need not be continuous or great in amount. *Pyle v. Richards,* 17 Neb. 180; *Morrissey v. Chicago, B. & Q. R. Co.,* 38 Neb. 406; *Town v. Missouri P. R. Co.,* 50 Neb. 768. From an intelligent application of the law contained in the statutes and in these decisions to the evidence and to the admitted facts in this case, there would seem to be no question but that the depression or draw passing under the bridge and onto the lands of defendant Tassler is a watercourse, whether we adopt the contention of plaintiff that it continues across the Tassler land to the east and northeast, and thence in a northeasterly direction to the Elkhorn river, or the contention of defendants that, after going 25 or 30 rods east from the bridge, it turns about due north and then northwest and then again northeast across the

lands of defendants Stone and Miller onto and across the land of plaintiff into Moses creek and the Elkhorn river. Either way, under the evidence, it is a depression or draw more than two feet below the surrounding lands and having a continuous outlet to a stream of water, brook or river, as defined by our statute. The dispute is which course from the point in question does the watercourse go.

This court has further decided that the owner of land cannot collect surface water in a volume upon his premises and by means of an artificial ditch discharge it upon the land of another, without the latter's consent, contrary to the natural course of drainage and to the latter's damage and detriment. *Todd v. York County,* 72 Neb. 207; *Kane v. Bowden,* 85 Neb. 347; *Shavlik v. Walla,* 86 Neb. 768. The same principal has been discussed, recognized and established by this court in the earlier cases. See *Davis v. Londgreen,* 8 Neb. 43; *Fremont, E. & M. V. R. Co. v. Marley,* 25 Neb. 138; *Lincoln Street R. Co. v. Adams,* 41 Neb. 737; *Bunderson v. Burlington & M. R. R. Co.,* 43 Neb. 545; *Town v. Missouri P. R. Co.,* 50 Neb. 768. This court has also in a number of cases announced the general common law doctrine that no landowner has the right to divert a natural watercourse so as to cause injury to another landowner. *Pyle v. Richards, supra; Roe v. Howard County,* 75 Neb. 448; *Nelson v. Wirthele,* 88 Neb. 595; *Keifer v. Shambaugh,* 99 Neb. 709.

At the hearing in the trial court the burden of proof was on the plaintiff to establish his case by a preponderance of the evidence, and on appeal this court, on a hearing *de novo,* must be satisfied from the record that all material facts charged in the petition and denied in the answer are proved by a fair preponderance of the evidence, before the plaintiff can be given the relief prayed. We are not convinced from a careful consideration of the pleadings and of all the evidence preserved in the bill of exceptions that the open ditch, so far as constructed, does and, if finished as intended, will actually divert the water from any natural depression or watercourse, or that it will conduct or

discharge the water in mass or volume onto plaintiff's land, to his damage.

The weight of the evidence seems to be that the waterway, the various depressions and the ditch were nearly filled with water at the time of the hearing; that the ponds, swales and sloughs on defendants' lands still contained water, but that the plaintiff's land was covered with grass in the depressions and swales which pass across it and was not flooded or covered with water. It also appears from the evidence that the natural waterway and the ponds situated upon the several tracts of land of defendants contain fish, and that rushes, cattails and other vegetation indicative of springs or a permanent water supply grow along the banks and edges. It is also beyond question that this whole country is more or less level, with, however, a slight general drainage to the northeast into the Elkhorn river; that the lands of defendants are more or less filled with water in the depressions, ponds or sloughs in the rainy season or when there is an excess of rain or snow, and that all waterways and water holes fill up, overflow and flow into each other, and the water passes slowly through many depressions or sloughs in a general direction northeast toward the Elkhorn river.

The undisputed testimony shows that the ditch in controversy was commenced on the west side of the northwest quarter of section 15, known as the Tassler quarter; that on the west line of this quarter is a public road, and that south of the center of such west line is a bridge over the slough or watercourse; that the ditch in question begins and goes about 25 or 30 rods east and northeast from said bridge, then turns directly north for a short distance, after which it goes in a northwesterly direction until it crosses into the west half of section 10, being the land owned by defendant Stone, continues on until it strikes the west line of section 10, then continues in a northerly direction along said west line on the land of defendant Stone. There is evidence showing that there is very little natural flow of water in this section of the country owing to the lands being

nearly level, with only a slight trend or depression generally to the northeast. It also appears that there is a depression trending northeast and reaching Moses creek to the east of plaintiff's land, and that there is another depression coming from the west or southwest which carries water, at least in time of freshets, across the Miller land onto and across plaintiff's land, and that the open ditch starting at the west side of section 15 connects with this depression or draw and will discharge its water therein, and that is liable, especially in time of high water, to pass along such depression or draw upon and across plaintiff's land. It does not appear from the evidence that the water holes on the lands of defendants Stone, Tassler and Miller drain entirely, even with the construction of the ditch in controversy, but that they fill up and overflow when the whole lands are inundated in times of excessive rainfall, snow or high water. The velocity of the water in the ditch since its construction and also in all the other draws, watercourses and depressions is very slow and the current, if any, is almost imperceptible.

It is a significant fact that the defendants in their answer state that one of the objects of the construction of the open ditch is not to change the course of channel, but to produce an acceleration of the current and make the water run faster in the natural depression or waterway, and thus aid the discharge and passage, instead of permitting the waters to "spread out over a large acreage of land on both sides of said natural waterway, draw and depression, where it usually remains for fully half the summer and only gradually finds its way through said natural depression" into the Elkhorn river.

The evidence introduced on behalf of the defendants is that the open ditch constructed by them is along the bed or bottom of the waterway created by nature, and not by man, and is in fact but an enlarging and lowering of such bed, and that said ditch has been and is intended to be constructed in the lowest part of the continuous depression or waterway extending from the bridge on the Tassler

land, across the Stone and Miller lands, to that of plaintiff. From the evidence it does not appear that the effect of this, unless the ditch is continued across plaintiff's land clear to Moses creek, a tributary of the Elkhorn river, would be to pile up or mass the waters and discharge them onto plaintiff's land, as charged in plaintiff's petition. On the contrary, it seems that the only effect would be to lower slightly the water in the ponds and other depressions sufficient to fill the ditch, and then that it would stand there for the season and be dissipated only by an almost imperceptible flow or by seepage and evaporation the same as before, except in cases of high water, when the whole country would be flooded. This would certainly be the effect under ordinary conditions, and in case of high water the overflow on plaintiff's land would be carried off in the natural depression or draw, which the evidence shows crosses the same in a northeasterly direction toward Moses creek.

It is not shown by a preponderance of the evidence that the water is drawn from the ponds and depressions on the east part of defendant Tassler's land or from the lands northeast thereof into the open ditch in controversy and then transmitted in such ditch in any considerable quantity to the north and northeast. There is no evidence showing any flowage of water from the ditch onto plaintiff's land. There is undisputed evidence that the water in the depressions or waterways on the east and northeast of the Tassler land is still slowly running on its way northeast to the Elkhorn river. The evidence does not show that this water has been diverted, stopped or perceptibly diminished in its flow in that direction, or that its course has been materially changed by or since the construction of the ditch. Of course, there is quite a conflict of evidence and the numerous witnesses who testified on behalf of plaintiff and defendants do not agree entirely on many of these points. It is in fact impossible to harmonize all of such evidence.

The statutes of Nebraska provide for a trial *de novo* in

all appeals from the district courts to the supreme court in suits in equity, wherein a review of some or all of the findings of fact is asked by appellant, and the statute further provides that upon such new trial it shall be the duty of this court to retry the issues of fact involved and "reach an independent conclusion, * * * without reference to the conclusion reached in the district court or the fact that there may be some evidence in support thereof." Rev. St. 1913, sec. 8198. This statute does not mean that the ordinary rules as to the burden of proof, competency and materiality of evidence do not apply, or that where the evidence is conflicting this court should not give some weight or consideration to the findings and conclusions of the lower court.

In *Corn Exchange Nat. Bank v. Jansen,* 70 Neb. 579, this court used the following language: "The findings of the trial judge, who made a thorough and painstaking original investigation, although no longer conclusive, are entitled to respectful consideration, if not to considerable evidential weight in this court."

In *Cooley v. Rafter,* 80 Neb. 181, and *Wetherell v. Adams,* 80 Neb. 584, this court holds that, when the evidence in the district court consists of oral testimony which is in sharp and irreconcilable conflict, and the conclusion derivable therefrom is dependent in part upon inferences from circumstances, some of which are in dispute, and in part upon the weight and credibility of testimony, to be determined from the degree of competency of the witnesses, their opportunity for knowledge and apparent clearness of their recollection, and the reasons therefor, the findings of the trial judge will be considered in determining the issues in this court.

There were some eight witnesses who testified to a part or all of the facts alleged in plaintiff's petition, while on the part of the defendants there were more than double that number who gave evidence in whole or in part supporting the material allegations in the answer, and in flat contradiction of the testimony given by the witnesses for

plaintiff. The district court was on the ground and per-
haps personally knew a large number of these witnesses,
was able to observe their manner of testifying and come to
a wise and enlightened conclusion as to the truthfulness or
untruthfulness of the testimony given; and it also may
have known the general character of the witnesses for
truth and veracity. Surely the judgment of such court in
case of a serious conflict of evidence, would be far better
than that of this court, which is obliged to form its con-
clusions from and base its judgment almost entirely upon
the pleadings and the evidence preserved in the bill of ex-
ceptions. This court is at the great disadvantage of not
having the opportunity for a personal contact with and the
personal presence of the numerous witnesses who testified,
but is obliged to obtain its information as to their credi-
bility entirely from the typewritten pages of the record. Of
course, a preponderance of the evidence does not, in every
case, depend on the number of witnesses who may testify
to certain material facts, but upon their means of knowl-
edge, experience, capacity and opportunity for observa-
tion, and more especially upon the character of those testi-
fying. If we consider the number of witnesses and their
testimony in connection with the pleadings, then the find-
ings should be against plaintiff, even on a trial *de novo,*
under the requirements of the express statute, but if we
add to this, as we are permitted under the decisions of this
court, the weight of the findings of the lower court, which,
from personal observation and contact, is our superior in
ability to judge of the credibility of the witnesses and the
weight to be given their testimony, there would seem to be
no question but that the findings of the district court are
sustained by a great preponderance of the evidence.

Based upon these considerations and upon the estab-
lished principles of law applicable to this case, we con-
clude that the findings and judgment of the district court
should be, and they hereby are

AFFIRMED.