EDWARD COHEN, APPELLEE, V. SWANSON PETROLEUM COMPANY, APPELLANT.

276 N. W. 190

FILED NOVEMBER 26, 1937. No. 30106.

*George C. Pardee* and *Bernard R. Stone,* for appellant.

*Leon & White* and *Louis E. Lipp, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE, CARTER and MESSMORE, JJ., and TEWELL, District Judge.

MESSMORE, J.

This is an appeal from the district court for Douglas county, wherein the court found for the plaintiff and assessed the amount of his recovery in the sum of $1,155.74, from which decree and judgment the defendant appealed.

For convenience, the appellant will be designated herein as the defendant, and the appellee as the plaintiff.

The plaintiff's petition predicates a cause of action based on an alleged written contract under date of January 30, 1933, under the terms of which plaintiff agreed to use certain products of the defendant, and the defendant agreed to pay one-half cent for each gallon of gasoline delivered by the defendant to the plaintiff as a so-called rental, and agreed further to allow the plaintiff a margin of 4½ cents under the standard retail gasoline prices in the city of Omaha, such contract being for a period of one year and subject to renewal for three years. Plaintiff's petition further alleges that on February 1, 1933, one Chris C. Bentzen brought an action in replevin to recover certain equipment in the plaintiff's place of business, and plaintiff asks an accounting.

The defendant's answer contains a general denial, alleges an assignment of the equipment in the gasoline station to it and a foreclosure of such chattel mortgage, and further alleges the execution of two contracts by the plaintiff, one a regular service station lease contract; the other a contract providing for the sale of gasoline and the margin of profit to the plaintiff thereunder; sets forth the account of the plaintiff and defendant, and prays judgment for the oil, gas, grease and tire account of the plaintiff with defendant, in the sum of $1,244.26.

The evidence reflects that the plaintiff was desirous of entering into the oil and gasoline business at Twenty-fourth street and St. Mary's avenue in the city of Omaha, and taking over a station, previously occupied by F. D. Winslow and W. R. McCoy, who apparently had abandoned the operation of the station, owing a mortgage on the equipment therein to Chris C. Bentzen, dated July 26, 1932, which mortgage was properly filed of record. The plaintiff had negotiated with several oil companies selling standard products, and finally contacted the defendant company with a view to contracting with it to handle its products. The defendant company took an as-

signment of the chattel mortgage in order to keep the equipment in the station, and as a matter of convenience for the new operator, the plaintiff. Two contracts were entered into on or about the 18th day of January, 1933, which the evidence discloses were executed by the plaintiff, and which appear in the evidence in this case as exhibits 3 and 4, and by the terms of which, according to the defendant, plaintiff was to receive a discount of $3\frac{1}{2}$ cents a gallon on "Nevr-nox" Ethyl gasoline, $3\frac{1}{2}$ cents on "Diamond Regular," and 1 cent on power gasoline. The other agreement was a lease agreement of one-half cent a gallon, to be paid by defendant to plaintiff for a lease of the premises. The defendant denies that any other agreement existed between the parties. Plaintiff contends that the contract for sale of gasoline was at a greater margin to him, viz.: $4\frac{1}{2}$ cents on the "Nerv-nox," $4\frac{1}{2}$ cents on "Diamond Regular," $2\frac{1}{2}$ cents on the competitive gasoline, and one-half cent as rental, making a total of 5 cents on all gasoline except the competitive power gasoline.

The evidence on behalf of plaintiff is to the effect that the gasoline and oil contract executed by him was not filled in relative to the margin amount and was to contain noncancelation clauses; that the cancelation clause was stricken from the lease agreement, and the contract carrying the gasoline margin conception contained a cancelation clause; that such contracts were for his convenience in order to start operation of the stations on the 19th of January, 1933, and that later another contract was to be entered into between the parties, conveying his conception of the margin of profit to which he would be entitled, in the event he handled defendant's products, viz., 5 cents a gallon.

The plaintiff predicates his cause of action on the contract which he alleges was entered into January 30, 1933, and in which he claims he conveyed his idea of the margin of profit to which he was entitled, and which was on the printed form exactly as the contract executed on January 18, with the exception of the figures for his margin of

profit. Plaintiff's testimony on this contract of January 30 follows: "Q. Did you have the contract? A. Yes, sir. Q. What happened to it? A. I had some argument with them after I was in business there about a year. They sent me a statement saying I owed them a certain amount of money. I called them up and told them they were wrong and I could not figure up—that they owed. Mr. Herring (city salesman for the defendant) came up and said they mislaid their contract and wanted to see mine. * * * Q. Did Mr. Herring come to your station? A. Yes, sir. Q. Did you show him your contract? A. Yes; I did. Q. What happened? A. We were there sitting in the office talking, and another car came on the job; and I wanted to wait on the car, and when I came back Herring and the contract were both gone. Q. Have you ever been able to get that contract back? A. No, sir." Then the plaintiff proceeded to detail the contents of the contract. The evidence as to the existence of this contract was given by a brother of the plaintiff who testified that he had advanced money for the business operations of the plaintiff and had seen the contract containing the profit margin contended for by the plaintiff. The witness A. P. Burke, an oil salesman for the defendant, testified that he was present on the 18th day of January, 1933, when negotiations were had between Mr. Swanson, representing the defendant, and Mr. Munson, secretary of the company, and the plaintiff in the office of the defendant company, and remembered that the plaintiff and defendant had entered into a contract for a half-cent lease on the station and $4\frac{1}{2}$ cents on the margin of profit; that the deal was based on 5 cents for the "Nevr-nox," 5 cents for the regular, and 3 cents for the competitive gasoline. His reason for remembering the prices in the contract was that he desired to sell gasoline to the plaintiff, having terminated his relations with defendant.

The testimony on behalf of defendant is to the effect that two contracts had been entered into on January 18, 1933; that the company had agreed to give the plaintiff the benefit of any spread of margin on account of the fluctua-

tion in price of the products, and had, for a period of five months after the plaintiff started in business, given him what amounted to a 5-cent margin, and on separate oc-casions had credited him with two certain amounts as allowances, in accordance with the terms of the contract, one in the sum of $343.94 in January, 1934, and a final amount of $544.27 in October, 1935; that during the time of the dealings between plaintiff and defendant the defendant cut the margin of gasoline below the contract price, on account of business conditions in its field; that is, below the price in the contract contended for by the company; that finally the plaintiff was placed on a C. O. D. basis with the defendant, and the company declined to extend further credit to him, as a result of which he terminated his business relations with it and bought gasoline and oil elsewhere. Defendant denied the existence of any other contracts than the contracts of January 18, 1933. Mr. Herring denied the transaction relative to the contract as testified to by the plaintiff. The defendant denied that Mr. Burke was present at the time of the negotiations with the plaintiff on January 18, 1933, and Mr. Munson, secretary of the company, testified that he did fill in the contract blanks in typewritten form, to meet the ideas of the contracting parties. The chattel mortgage was foreclosed, bid in by the defendant; plaintiff was present at the time of the foreclosure sale, and knew the facts relative thereto.

This case is tried *de novo,* as provided in section 20-1925, Comp. St. 1929. All of the evidence is not set out in this opinion. The foregoing statement of facts is sufficient for an analysis of this case.

The defendant contends in this court that the evidence is insufficient to warrant the decree and judgment of the district court, and that plaintiff has failed to prove his case by a preponderance of the evidence, as provided by law. The plaintiff was seeking to prove a contract dated January 30, 1933, which he claimed was either lost or taken by an agent of the defendant company. The evidence as to the existence of the contract was given by

plaintiff's brother, who claimed he saw a contract with the defendant on regular printed form, like exhibits 3 and 4, which plaintiff signed; that he examined the contract and that it provided for $4\frac{1}{2}$ cents on the Ethyl, $4\frac{1}{2}$ cents on the regular, and $2\frac{1}{2}$ cents on the power gasoline. And Burke, who claimed to have been present at the dealings had between plaintiff and defendant on January 18, 1933, stated what he understood the margin of profit to be. The evidence relative to the search made for the lost contract is to the effect that plaintiff had asked Mr. Herring for it on several occasions, and that Mr. Herring said that he did not have it.

The plaintiff has not proved the existence of the contract of January 30, 1933, by a preponderance of the evidence. There is nothing to show by this evidence that the plaintiff made a diligent search for the contract for which he contends. While an honest and diligent search is sufficient, there is no reasonably certain proof in this evidence of the loss of the contract of January 30, 1933. To determine whether an alleged contract, which is the basis of a suit, exists in fact might be, and often would be, to determine the only fundamental issue of fact in the suit. No definite and well-established rule can be laid down as to just the amount of diligence required in searching for a lost instrument, but rules of evidence must be adopted for practical purposes in the administration of justice. The extent of the rule is governed in some measure by the circumstances and a consideration of all the evidence in the case.

In 2 Jones, Commentaries on Evidence (2d ed.) p. 1492, it is said: "When it is sought to introduce a copy of a writing, the basic element of proof must necessarily be that the original document, deed, or other instrument, was at one time in existence, and this necessarily involves proof of its genuineness or execution. In the absence of such proof the rest must fall to the ground. It is not sufficient to prove the loss of the document of which the copy or other evidence is about to be given; it is absolutely essential to prove that a deed or document executed or signed

by some person was in existence, and that can only be done by proving the document as though it were in court. If the document were in existence, it would be proved by testimony as to its signature by either the party him-self or an attesting witness, or one who knew of the execution or was familiar with the signature; in its absence there must be, first of all, proof of the execution or signature of the document, so that the superstructure of contents and loss may be safely raised upon it."

In *Dempster Mill Mfg. Co. v. First Nat. Bank of Holdrege*, 49 Neb. 321, 68 N. W. 477, this court held: "Parol testimony is not admissible to prove the contents of a written document until its absence is accounted for." And in *Miksch v. Tassler*, 108 Neb. 208, 187 N. W. 796, we held: "To entitle plaintiff to findings and decree in his favor in a trial *de novo* in this court, it must appear under the pleadings and from the evidence preserved in the bill of exceptions that the material facts charged in the petition are supported by a fair preponderance of the evidence." In *Pierce v. Miller*, 107 Neb. 851, 187 N. W. 105, it was held: "Where a party affirmatively pleads the existence of a fact material to the issue, he thereby assumes the burden of proving such fact."

In each of the cases cited by the plaintiff, relative to the introduction of secondary evidence to prove the contents of a lost instrument, it is shown conclusively that a reasonably diligent search had been made for such instrument, and, further, that the existence of such lost instrument was shown as if the instrument had been in court.

The decree of the court found that the plaintiff and defendant entered into two written contracts on or about the 18th of January, 1933, one providing for a private service station lease, and the other for a private station license agreement, and fixed the intention of the parties as contended for by the plaintiff, relative to the margin of profit in said contract; found that the plaintiff had paid the amount of $200 due on the chattel mortgage on the equipment in the station, and found further that the defendant

owed the plaintiff $1,155.74 in the accounting. It will be noted that this decree and judgment of the court are not based on the contract as contended for by plaintiff; nor is there any pertinent statement in the decree as to the proof of such contract. Suffice it to say in this regard, that this action is based on a distinct contract, claimed by plaintiff, which he has failed to prove by a preponderance of the evidence. The record is clear on the foreclosure of the chattel mortgage. The contention of the plaintiff in this regard, under the pleadings and the evidence, cannot prevail. In the absence of any contrary statement as to the attack on the accounting, other than as disclosed by the evidence, and in the absence of an attack on the contract by virtue of which the defendant voluntarily reduced the margin price of the gasoline from a certain date, as disclosed by the evidence, we believe that the account and credits, as existing between plaintiff and defendant, are proved by a preponderance of the evidence, and that defendant should have and recover of and from the plaintiff the sum of $1,244.26.

The contention that the objection that no sufficient and proper foundation had been laid was not ample, for the reason that it did not specifically point out the objection to the testimony, is not well taken. The general objection to the admission of evidence as incompetent, irrelevant and immaterial, and no sufficient and proper foundation laid, relative to a lost instrument, as disclosed by the evidence, is sufficient to notify the court and counsel of the reasons for objecting.

The judgment of the district court is reversed, and such court is directed to enter judgment for the defendant and against the plaintiff in the sum of $1,244.26.

REVERSED.