ROSE KUENZLI ET AL., APPELLANTS, v. FRED KUENZLI ET AL., APPELLEES.

36 N. W. 2d 247

Filed March 3, 1949. No. 32520.

*Fraser, Connolly, Crofoot & Wenstrand* and *J. V. Benesch,* for appellants.

*Campbell & Nyberg* and *Mills, Mills & Mills,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CHAPPELL, J.

Plaintiffs and the principal defendants, Fred Kuenzli and Frank Kuenzli, are elderly sisters and brothers. The other defendants are wives of the brothers. This action was brought to establish and specifically enforce an alleged lost written instrument executed by plaintiffs and their brothers in February or March, 1922, whereby said defendants agreed that upon payment of two certain real estate mortgages for $9,000 each, executed by de-

fendants to a loan company on two described farms separately deeded to the brothers by their father during his lifetime, they would respectively execute two new real estate mortgages thereon for a total of $12,000, and pay the proceeds to plaintiffs as compensation for services rendered by plaintiffs in caring for their father and mother during their lifetime.

Defendants answered, denying generally that such an agreement ever existed. They also claimed substantially that in, arising out of, and resulting from an action brought by the brothers against the father on January 21, 1922, to specifically enforce a prior oral agreement made by the father, whereby they were to have the farms after the death of both the father and the mother, an agreement and settlement was made by the parties finally and completely settling defendants' rights in the land, and the father's estate, and fixing not only their obligations to the father and his estate, but also to plaintiffs. They claimed also that by stipulation between the parties, a final judgment was entered in such action, adjudicating all the rights and liabilities of the brothers and quieting their title to the farms in conformity with such agreement and stipulation.

Plaintiffs' reply denied generally, but admitted the pendency and disposition of such former action by stipulation and judgment thereon.

After hearing upon the merits, the trial court entered its judgment, finding generally in favor of defendants and against plaintiffs. Their motion for new trial was overruled, and plaintiffs appealed, assigning as error substantially that the judgment was contrary to law and not sustained by the evidence. We conclude that plaintiffs' assignments should not be sustained.

In Miller v. Knight, 146 Neb. 207, 19 N. W. 2d 153, it was held: "While this court is obliged, in an equity action, to try the issues of fact de novo upon the evidence and reach an independent conclusion without reference to the findings of the district court, yet when the testi-

mony of witnesses upon the material issues involved is in irreconcilable conflict, this court will consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the other." See, also, Rettinger v. Pierpont, 145 Neb. 161, 15 N. W. 2d 393.

It is generally the rule that a party seeking to recover upon a lost or stolen written instrument has the burden of proving the former existence, execution, delivery, loss, and contents of the instrument relied upon by clear, satisfactory, and convincing evidence. Nitz v. Widman, 106 Neb. 736, 184 N. W. 172; Cohen v. Swanson Petroleum Co., 133 Neb. 581, 276 N. W. 190; 54 C. J. S., Lost Instruments, § 27, pp. 831-834; 38 C. J., Lost Instruments, § 24, p. 259, §§ 25, 26, and 27, p. 260; 34 Am. Jur., Lost Papers and Records, § 62, p. 627.

It is also the rule that a party seeking to secure specific performance must not only so establish that he has a valid legally enforceable contract, but also must establish by a preponderance of the evidence that he has substantially complied with its terms by performing or offering to perform on his part the acts which formed the consideration of the undertaking on the part of the defendant, or that he is ready, able, and willing to perform his obligations under the contract and do whatever has been made a condition precedent on his part or show a valid excuse for nonperformance of the covenants imposed upon him. O'Brien v. Fricke, 148 Neb. 369, 27 N. W. 2d 403.

In the light of the foregoing rules, we have examined the record and conclude that plaintiffs failed to assume the burden imposed upon them. Without dispute, plaintiffs lived with, rendered services to, and cared for the father and mother during their lifetime. Concededly, liability therefor, if existent, was primarily that of the father or his estate. However, plaintiffs' evidence with reference to the contract relied upon to establish the liability of defendants therefor was not only vague,

unsatisfactory, and not convincing upon every other element which they were required to establish, but was also categorically denied by defendants, whose evidence was supported by undisputed circumstances, transactions, and proceedings hereinafter set forth.

In that connection, the following is without dispute: In 1879 the farms involved were purchased by the father. Until 1897 the family, composed of the father and mother, plaintiffs, two other daughters, and Fred Kuenzli and Frank Kuenzli, hereinafter generally designated as the defendants or the sons, lived on the farms. At that time, the father retired, bought a home in, and moved to Columbus, where the father, mother, and both plaintiffs eventually lived. The defendants, however, continued to live on the farms, paying taxes thereon and an annual cash rental to the father, while plaintiffs generally lived with and cared for the father and mother until their deaths. The mother died in 1917 and the father in 1927.

On February 26, 1903, the father made a will, contended by defendants to have been executed in performance of and in conformity with a prior existing oral agreement with them. Therein, among other provisions, after giving his wife, the mother of plaintiffs and the defendants, the use and benefit of all his property during her lifetime, and disposing of certain personal property, the will devised Lot 1, Block 127, in Columbus, and one described farm involved herein to defendant Fred Kuenzli, and devised the other described farm involved herein to defendant Frank Kuenzli, provided that after and upon final administration of the father's estate, they should each pay $1,200 to plaintiff Rose Kuenzli, $1,625 to plaintiff Emma Kuenzli, also $1,000 to Sophia Kuenzli, and $900 to Louisa Hagel, the two other daughters, which sums were respectively so bequeathed in the will. Plaintiff Rose Kuenzli was also devised the east half of Lot 2, Block 127 in Columbus.

Having knowledge of such will, the defendants continued to live on the farms, paid the taxes on the property

so devised to them, made very substantial improvements thereon, and paid an annual cash rental to the father.

Dissension arose, and the father canceled and revoked the foregoing will by one executed on June 19, 1920, in the presence of the four daughters but without defendants' presence or knowledge thereof. The specific provisions of the latter will do not appear in the record, but there is evidence indicating that it divided the father's estate equally between all the children. Thereafter, under date of August 26, 1920, the father caused to be prepared and served upon the defendants respectively notices to quit and vacate the farms on or before March 1, 1921, unless they would each agree on or before September 1, 1920, to pay a certain substantially enhanced annual rental therefor.

On September 3, 1920, the sons filed an action against the father for specific performance of their alleged oral agreement with him, evidenced generally by the father's 1903 will heretofore set forth, which agreement they had allegedly performed since its inception. On December 6, 1920, however, that action was voluntarily dismissed without prejudice.

A settlement was not perfected, and thereafter on January 21, 1922, a new action of similar import and purpose as the former, and to quiet the title to the farms respectively in them, was filed by the defendants, as plaintiffs, against the father as defendant.

On February 21, 1922, the sons entered into a written and acknowledged agreement with their father to satisfactorily adjust the issues raised in that action and to make a complete settlement of every controversy existing between them with respect to the farms. The agreement provided substantially that on or about March 1, 1922, in any event within 30 days from February 21, 1922, the sons would pay the father $18,000, and each, beginning March 1, 1922, would pay him $200 annually during his lifetime. Also, upon the father's death, each son was required to pay $250 as funeral expenses, and to erect a

monument. In consideration thereof, the father agreed to separately convey the farms involved herein by warranty deed to the sons respectively, upon which event the sons each agreed to fully release the father and his estate from all further claims by them. The warranty deeds were to be executed and deposited in escrow, to be delivered to the sons upon payment of $18,000 by them, and the action then pending was to be disposed of in such manner as was thereafter mutually agreed upon by the parties.

The parties were respectively represented by counsel, who, on February 21, 1922, entered into, signed, and filed in the action a stipulation which not only conformed with and included the terms of the foregoing agreement between the father and sons, but also specifically agreed that subject to the other conditions therein, upon payment of $18,000, the sons should be relieved from payment of any other sum or sums to the father and to any and all other children who might be heirs at law of the father, particularly Louisa Hagel, Sophia Kuenzli Shadd, Emma Kuenzli, and Rose Kuenzli, the last two being plaintiffs herein. It was further stipulated that the other payments to be subsequently made by the sons should in no wise be liens upon the farms, but personal obligations only.

Also, on February 21, 1922, the father as a widower, bearing relationship of father to the grantees, executed and acknowledged two warranty deeds to the separately described farms, wherein defendant Frank Kuenzli was grantee in one and defendant Fred Kuenzli was grantee in the other, the consideration in each being the past performance by the grantee of the grantor's oral agreement for the respective deed or conveyance, and the sum of $10,000 in hand paid.

Further, on February 21, 1922, the father likewise executed and acknowledged a warranty deed to Lot 1 and the east half of Lot 2, Block 127, in Columbus, wherein plaintiffs Rose Kuenzli and Emma Kuenzli in equal

shares were the grantees, the consideration therefor being $3,000 in hand paid, and love and affection.

Thereafter, on March 7, 1922, plaintiffs Rose Kuenzli, single, and Emma Kuenzli, single, jointly and severally executed and acknowledged two warranty deeds to the separately described farms involved herein, in which deeds defendant Frank Kuenzli was grantee in one and defendant Fred Kuenzli was grantee in the other, the consideration in each being $4,000 and other consideration, in hand paid. Each such warranty deed also specifically provided: "And the said Rose Kuenzli and Emma Kuenzli hereby relinquishes all their interest, rights, claims, and demands in and to the above described premises."

On March 8, 1922, evidence was adduced in the action then pending between the father and the sons, and the district court entered a judgment, filed March 15, 1922, fixing all the rights and liabilities of the parties, in strict conformity with the agreement and stipulation heretofore set forth, and quieting title to the farms absolutely in the sons. That judgment was never modified in any manner, and no appeal was taken therefrom. True, plaintiffs were not named as parties in that action, but it will be noted that contractually and for a valuable consideration they were parties to the settlement which finally disposed of the father's estate, out of which plaintiffs contended that they were to be compensated, and fixed the rights and liabilities of all the parties interested therein.

In that connection, on March 23, 1922, mortgage loans of $9,000 upon each farm were separately obtained and completed by defendants to make up the total of $18,000 cash to be paid by the sons. On that date, the father's account with the loan company was credited with $18,000 cash paid by the sons, and the father signed, executed, and delivered a receipt therefor to them. Out of that sum Sophia Kuenzli Shadd was paid $4,000 on March 24, 1922, Louisa Hagel was credited in her loan company

account with $2,000 on April 29, 1922, she having theretofore been advanced $2,000 by the father, and also on the same day plaintiffs Rose Kuenzli and Emma Kuenzli each received $4,000, being credited in their loan company account with a total of $8,000. They invested that amount with the loan company in mortgages on May 1, 1922, and received the interest thereon as paid, thereafter withdrawing $6,000 of the principal sum on May 1, 1927, and the remaining $2,000 on June 1, 1929.

In the regular course of events, the warranty deeds heretofore described were delivered to the respective grantees therein, and defendants have performed all of the conditions agreed by them to be performed. In addition, defendant Fred Kuenzli, at the time of the trial of the case at bar, had previously paid all the mortgage indebtedness on his farm, and defendant Frank Kuenzli had paid all of the mortgage indebtedness on his farm except $1,400 and a year's interest thereon.

It will be observed that plaintiffs have already received $8,000 cash, plus the Columbus properties, and that all of the daughters, including plaintiffs, have received a total of $14,000 in cash. Plaintiffs' contentions that at or about the time the foregoing transactions took place defendants orally agreed to pay. $14,000 more to plaintiffs, which a few days later was reduced in a separate written but lost agreement with defendants to $12,000 for wages due them from their father or his estate, are not sustained by the evidence. We are convinced that the instruments and proceedings heretofore described constituted the entire transaction, and conclude that plaintiffs, being bound thereby, should not recover in this action.

For the reasons heretofore stated, the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.

PAINE, J., not participating.