IN RE ESTATE OF RUTH I. MILLER, DECEASED.
PAULINE HARBERTS ET AL., APPELLANTS, V. JOHN P. MILLER,
PERSONAL REPRESENTATIVE OF THE ESTATE OF RUTH I. MILLER,
DECEASED, APPELLEE.
437 N.W.2d 793

Filed April 7, 1989.   No. 87-404.

Steven O. Stumpff, of Stumpff Law Office, and Daniel W. Ryberg for appellants.

Joseph P. Caniglia and James R. Sacoman, of Seminara, Caniglia, Turco, McCarthy & Sacoman, for appellee.

BOSLAUGH, WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and WITTHOFF, D.J.

FAHRNBRUCH, J.

Three sisters of the decedent, Ruth I. Miller, contend that the probate court erred when it (1) failed to set over the benefits of Miller's retirement plan to them and their brother, (2) assessed attorney fees and costs against them in a contest of the decedent's will, and (3) disallowed interest on a bequest to one of the sisters.

On appeal, the Douglas County District Court affirmed the decision of the Douglas County Court, and the sisters appeal to this court. We affirm in part and reverse in part.

Our review in probate cases is for error appearing on the record. *In re Estate of Reimer*, 229 Neb. 406, 427 N.W.2d 293 (1988); *In re Estate of Odineal*, 220 Neb. 168, 368 N.W.2d 800 (1985).

Ruth Miller died in Omaha on June 18, 1984. Her husband, Bert Miller, preceded her in death on May 28, 1984. Mrs. Miller died without issue. Besides his wife, Bert Miller was survived by two sons from a prior marriage. Because Mrs. Miller had cancer, it was anticipated that she would die before her husband. Mrs. Miller's will in effect prior to Bert Miller's death left all of her property to her husband. It did not provide for any alternate beneficiaries. Under those circumstances, if her husband died before she did, Mrs. Miller's property would have descended to her three sisters and her brother under the intestate laws of Nebraska. Neb. Rev. Stat. § 30-2303 (Reissue 1985). However, after her husband died, Mrs. Miller did execute a new will. In that will, she left her interest in a farm she had received through her side of the family and her personal and household effects to her three sisters and brother. Mrs. Miller also left a $50,000 cash bequest to one of her sisters, Pauline Harberts. The balance of her $587,057 gross estate was left to Mrs. Miller's two stepchildren, sons of her deceased husband.

On June 18, 1985, appellants filed objections to the proposed "Schedule of Distribution" of the estate's assets. A hearing on those objections was held November 19, 1985. The probate division of the Douglas County Court found that the proceeds of Mrs. Miller's retirement plan were assets of the estate and that Mrs. Miller's sister, Pauline Harberts, was estopped from

receiving interest on her $50,000 bequest. A portion of the bequest was paid shortly after Mrs. Miller's death, and the balance was paid on August 25, 1986. The Douglas County probate court ordered appellants to pay attorney fees and other costs incurred by the estate in defending appellants' contest of their sister's will.

## THE RETIREMENT PLAN

In life, Mrs. Miller owned and operated the Miller Art Gallery in Omaha. In 1981, she began contributing to a self-employed retirement program (Keogh plan). The plan was with Templeton World Fund and was serviced by Securities Fund Services, Inc. When she died, Mrs. Miller's plan totaled about $37,500. In May of 1982, Mrs. Miller executed a "Designation of Beneficiary" form naming her husband, Bert Miller, as the beneficiary of the plan upon her death. Her three sisters and brother were designated as alternate beneficiaries in the event Mrs. Miller's husband predeceased her. The original beneficiary document was mailed to Securities Fund. That organization acknowledged receipt of the document, but returned it to Mrs. Miller. The document states that the "form should be retained by the Participant. It should be forwarded to the Shareholder Service Agent, Securities Fund Services, Inc. . . . upon death of the Participant." Upon return by Securities Fund of the beneficiary document, Mrs. Miller sent a copy of it to her brother and advised him to maintain it in his safe.

After Mrs. Miller's death, the original beneficiary document was not found through a diligent search conducted by John P. Miller, the decedent's stepson and personal representative. Mrs. Miller's brother produced the copy. The fund proceeds were paid to the estate because the original "Designation of Beneficiary" was not presented to the fundholder. Nevertheless, John Miller indicated that he was willing to permit the proceeds of the Keogh plan to be distributed to his stepmother's sisters and brother, "although the absence of the executed beneficiary designation form [did] not legally require him to do so." Other issues were raised by Mrs. Miller's sisters. Thereafter, John Miller declined to set over the proceeds of Mrs. Miller's Keogh Plan to her sisters and brother.

The fact that John Miller was at first willing to give the plan's

proceeds to the appellants, even without the original beneficiary designation form, makes it unlikely that the form was stolen or destroyed after Mrs. Miller's death. As will be shown, the more likely inference is that before her death, Mrs. Miller intentionally destroyed the document.

Appellants contend that the original beneficiary designation form was lost by Mrs. Miller. Appellants argue that they met their burden of proof under the rules in *Kuenzli v. Kuenzli*, 150 Neb. 855, 36 N.W.2d 247 (1949). In *Kuenzli*, we held that a party seeking to recover upon a stolen or lost written instrument has the burden of proving the former existence, execution, delivery, theft or loss, and contents of the instrument by clear and convincing evidence.

Appellee theorizes that the missing original beneficiary designation form is analogous to a missing will. When a will cannot be found at the time of death, it is presumed destroyed by the decedent with the intention of revoking the will. *In re Estate of Drake*, 150 Neb. 568, 35 N.W.2d 417 (1948). This rule is specifically designed for lost wills, and we decline to apply it to missing beneficiary designation forms. Instead, we consider the missing form to be controlled by our stolen or lost document holdings and apply the rules set forth in *Kuenzli.*

Under *Kuenzli*, the appellants had the burden of proving by clear and convincing evidence (1) that the beneficiary designation form was in existence at one time; (2) the contents of the form; (3) that it had been executed by Mrs. Miller; (4) that it had been delivered; and (5) that it was stolen or lost, as opposed to having been intentionally destroyed by Mrs. Miller.

The appellants proved by clear and convincing evidence that the original beneficiary form naming Mrs. Miller's brother and sisters as alternate beneficiaries existed at one time, the contents of the form, and that it had been executed by Mrs. Miller.

Considering the facts of this case, the form could not have been effectively delivered after Mrs. Miller's death. It is to be remembered that the appellants' interest in the Keogh plan funds could not vest (1) until the death of Mrs. Miller and (2) until the original executed form naming appellants beneficiaries of the fund was delivered to the fund's agent after Mrs. Miller's death.

The trial court found that the appellants failed to prove by clear and convincing evidence that the original beneficiary form was stolen or lost. As a matter of fact, the appellants never claimed the form as stolen, only that it was lost. The inability to find a document after someone dies does not necessarily mean that the document is lost.

After Securities Fund returned the original beneficiary designation form, Mrs. Miller knew that if the form was to be effective, it must be sent to Securities Fund after her death. The beneficiary designation was revocable. If Mrs. Miller continued in her desire to have her siblings receive the fund proceeds, she could have placed the original form in escrow, placed it where it could have been found upon her death, or mailed the original, rather than a copy, to her brother for safekeeping and presentation to the fund upon her death.

At the time her will was written after her husband's death, Mrs. Miller was obviously aware of the extent of her property and the objects of her bounty. She did not exclude her siblings from her will, but left them her interest in the family farm and her personal and household effects. Mrs. Miller also left one of her sisters a bequest of $50,000; that amount alone is well in excess of the fund's proceeds. It can be inferred that Mrs. Miller, having had contact with Securities Fund regarding her beneficiary form, was aware of the Keogh fund contract provision that the funds would go to her estate in the absence of presenting a valid original beneficiary designation form to the funds servicing agent after her death.

The fact that Mrs. Miller, a competent and successful businesswoman, opted to keep the original beneficiary designation form herself, and the fact that the Keogh funds were not mentioned in her will, is significant. The inference that Mrs. Miller destroyed the original form designating her sisters and brother as alternate beneficiaries with the intent to revoke its effectiveness is, at the very least, as strong as the inference that the original form was lost.

The appellants, who are attempting to claim under the original beneficiary form, have failed to prove by clear and convincing evidence that the original beneficiary designation form was, in fact, lost. The trial court's finding that the Keogh

plan funds are an asset of the estate is correct and is affirmed.

ATTORNEY FEES AND COSTS

When a settlement involving the Keogh plan and other claims of the appellants against the decedent's estate could not be reached, appellants filed objections in county court to the probate of the will executed by Mrs. Miller after her husband's death. Appellants claimed that Mrs. Miller was coerced by her stepson lawyer, John Miller, into making the will and that the decedent was not competent at the time the will was executed.

The will contest was removed from the Douglas County probate court to the Douglas County District Court on July 3, 1985. Several depositions were taken. Mrs. Miller's three surviving sisters dismissed the case when it became apparent that they would not be successful in contesting the will Mrs. Miller had executed after her husband died.

Appellants' second assigned error is the Douglas County probate court's assessment against them of costs and attorney fees incurred by the personal representative in the will contest litigation. The court ordered that the appellants pay $6,146.64 in costs and attorney fees to the estate. Appellants argue that the county probate court was without jurisdiction to award costs related to their contest of the will because the action was removed to district court.

In support of their argument, appellants point to Neb. Rev. Stat. § 30-2429.01 (Reissue 1985), which provides the procedure for transferring a will contest to district court. That section in part provides:

(3) Upon the filing of the transcript in the district court such court shall have jurisdiction over the proceeding on the contest. Within thirty days of the filing of the transcript any party may file additional objections.

(4) The district court may order such additional pleadings as necessary, and shall thereafter determine whether the decedent left a valid will. Trial shall be to a jury unless a jury is waived by all parties who have filed pleadings in the matter.

(5) The final decision and judgment in the matter transferred shall be certified to the county court and proceedings shall be had thereon necessary to carry the

final decision and judgment into execution.

When a will contest is transferred pursuant to this statute, the district court obtains jurisdiction over all proceedings related to the action. Jurisdiction remains with the district court until a final decision is reached as to the will's validity and the case remanded to the county court. Once the contest is transferred to the district court, the county probate court has no authority over the matter other than to carry out the district court's final decision after remand. We hold that the assessment of costs is in the district court.

We fail to find that the Nebraska Probate Code has any specific statute relating to the assessment of costs and attorney fees in a will contest action which has been transferred to a district court. That specific power has been reserved to the district court. Neb. Rev. Stat. § 24-541.10(2) (Reissue 1985) authorizes the district court to tax costs and attorney fees if appeal is taken vexatiously or for delay. The statute provides:

> In all matters arising under the Nebraska Probate Code, if it shall appear to the district court that an appeal was taken vexatiously or for delay, the court shall adjudge that the appellant shall pay the cost thereof, including an attorney's fee, to the adverse party in an amount fixed by the district court, and any bond required under subdivision (4)(a) of section 24-541.02 shall be liable therefor.

The order of the county probate court assessing costs and attorney fees to the appellants in the will contest is in error and should have been reversed by the district court on appeal. Accordingly, we reverse the district court on this issue and set aside the taxing of costs and attorney fees to the appellants. That being so, it is unnecessary for us to determine whether the will contest proceedings in the district court were taken vexatiously or for delay.

### INTEREST ON PAULINE HARBERTS' BEQUEST

Finally, appellants assign as error the trial court's refusal to award interest on the $50,000 bequest to Pauline Harberts, Mrs. Miller's sister.

Neb. Rev. Stat. § 30-24,102 (Reissue 1985) provides that interest is to be paid on "pecuniary devises" paid out more than

1 year after the appointment of a personal representative. In this case, John Miller was appointed personal representative of the estate on June 25, 1984, and Harberts was paid the majority of her $50,000 bequest on August 25, 1986. Obviously the bequest was paid more than 1 year after the personal representative was appointed; however, that does not end the analysis.

Section 30-24,102 is qualified by the rule set forth in *In re Estate of Kierstead*, 128 Neb. 654, 259 N.W. 740 (1935). That rule provides in substance that to charge a personal representative with interest would be inequitable when the delay in payment is caused by a will contest or through other litigation which prevents speedy distribution of the estate. A personal representative is not ordinarily chargeable with interest, at least until a reasonable time has elapsed after the will contest or other litigation has been completed.

Because of the will contest action and the objections to the distribution schedule, the personal representative was unable to distribute the bequest within 1 year. It would be inequitable to charge the estate with interest for that time unless there was an unreasonable delay in payment after litigation ended.

The trial court released its memorandum decision on April 24, 1986. The final order and approval of the distribution schedule was filed July 24, 1986. According to appellants' brief, the bequest was paid to Harberts approximately 1 month later, on August 25, 1986. This is not an unreasonable delay, and Harberts is not entitled to interest.

The trial court's refusal to award interest on Harberts' bequest is correct and is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED.