MARX & KEMPNER, PLAINTIFFS IN ERROR, V. J. D. KILPATRICK, DEFENDANT IN ERROR.

1. **Limitation of Actions:** FOREIGN JUDGMENT. A judgment of a superior court of a state of the Union, other than this state, sued on in this state, *Held*, A foreign judgment, within the intent and meaning of section 10 of the code of civil procedure, and that an action thereon must be commenced within five years after the cause of action shall have accrued.

2. ———: EVIDENCE. The evidence introduced under the answer setting up the bar of the statute of limitations examined, and *Held*, To sustain the verdict.

3. **Instructions** given and refused, considered, and *Held*, Properly given and refused.

4. **Trial:** SPECIAL VERDICT. In an action on a foreign judgment, the court submitted to the jury certain questions of fact for their special findings thereon. *Held*, No error.

ERROR to the district court for Gage county. Tried below before BROADY, J.

*R. W. Sabin* and *Griggs & Rinaker*, for plaintiffs in error.

*L. W. Colby, Hazlett & Bates*, and *Harwood, Ames & Kelly*, for defendant in error.

Cases cited by counsel are referred to in opinion.

COBB, J.

This action was brought in the district court of Gage county on a judgment recovered by plaintiffs against defendants in the district court of Galveston county, Texas, for the sum of $14,118.66, on the 26th of March, 1878.

The petition alleges the recovery of the judgment, and that there was then due thereon the sum of $13,343.20, with interest. The defendant, J. D. Kilpatrick, by his amended answer admitted the partnership of plaintiffs and the recovery as set forth, but alleging that before this action was brought, and after the cause of action had accrued, on the —— day of ———, 1878, himself and the plaintiffs had a settlement in full, of all accounts and matters between them, and the claim and judgment sued on in this action was fully paid and satisfied, and the same was accepted by the plaintiffs as a full settlement of the cause of action.

For a second defense, the defendant set up that, at the time the cause of action accrued, he was in the state of Nebraska, and had not absconded nor concealed himself; that after the cause of action had accrued he did not depart out of the state of Nebraska, nor abscond nor conceal himself; that he is now, and was for more than five years before the commencement of this suit, and has been continuously, a resident of Nebraska; that the cause of action did not accrue within five years next before the commencement of this suit, and the same is barred by the statute of limitations of this state. The defendant asks for judgment.

The plaintiff's replication to the first defense denied each allegation except the defendant's admissions. As to the second defense, replied that the cause of action did not accrue against the defendant, Kilpatrick, in the state of Nebraska, until the 17th day of July, 1879, at which date the cause of action accrued, and that, after it had so

accrued, the defendant, Kilpatrick, departed from and was absent from the state of Nebraska for the period of eighteen months in the years 1881, 1882, and 1883, and, while so absent, he had no usual place of residence in said state, and no service of summons could be had upon him in said state during the said period of eighteen months; and further denying each allegation of the second defense not specially admitted.

There was a trial to a jury, which found for the defendant. Three separate questions were submitted by the court to the jury for special findings, as follows:

I. Did the defendant, J. D. Kilpatrick, make to plaintiffs a quit-claim deed to the Tremont hotel property in Galveston, Texas?

II. If you answer the above in the negative, you need not answer this; but if you answer in the affirmative— was such deed accepted by the plaintiffs in satisfaction of the judgment sued on?

III. Did, or did not, the defendant, J. D. Kilpatrick, have a usual place of residence within the state of Nebraska between March 26, 1878, and April 7, 1884, for as much time as five full years? If you find that he did, answer yes. If you find that he did not, answer no.

Each of the questions were found by the jury in the affirmative. The plaintiffs' motion for a new trial was overruled, and judgment was entered for the defendant.

The plaintiffs bring the cause to this court on the following assignments of error:

1. The verdict is not sustained by sufficient evidence.

2. The verdict is contrary to law.

3. The court erred in refusing the 3d, 5th, 8th, and 9th instructions asked by the plaintiffs.

4. The court erred in giving the third paragraph of the instructions asked by defendant.

5. The court erred in giving the second paragraph of the instructions asked by defendant.

6.   The court erred in giving the third paragraph of the instructions upon its own motion.

7.   The court erred in submitting findings Nos. 1 and 2 to the jury.

8.   The court erred in submitting special finding No. 3 to the jury.

9.   The court, instead of submitting special finding No. 3 to the jury, should have instructed the jury, under the evidence, that said defendant, Kilpatrick, had not had his usual place of residence in the state of Nebraska just prior to the commencement of plaintiffs' action sufficiently long to bar plaintiffs' claim.

10.   The court erred in admitting testimony on part of defendant over objection of plaintiffs, to which exception was duly taken.

11.   The court erred in allowing defendant's witnesses, R. J. Kilpatrick, J. Munson, and others to testify as to the admissions of defendant as to his intentions about making Nebraska his usual place of residence, over the objection of plaintiffs, to which exception was duly taken.

12.   The court erred in sending out to the jury plaintiffs' instruction No. 3, marked refused when it should have been marked given.

13.   Errors of law occurring at the trial duly excepted to.

14.   The court erred in overruling the motion for a new trial.

The plaintiffs' counsel, in their original brief, treat this case as an action brought on a *foreign* judgment. But in their supplemental brief, presented since the submission of the former, they seek to withdraw this admission and contend that the judgment of the Texas court is a domestic one.   To this point is cited the cases of *McElmoyle v. Cohen*, 13 Peters, 311, and *Stockwell v. Coleman*, 10 Ohio St., 33.

The sections of our statute of limitations, pleaded by

defendant, prescribing the time in which actions shall be brought, are:

"Sec. 10. Within five years, an action upon a specialty or any agreement, contract, or promise in writing, or foreign judgment."

"Sec. 20. If, when a cause of action accrues against a person, he be out of the state, or shall have absconded or concealed himself, the period limited for the commencement of the action shall not begin to run until he come into the state, or while he is absconded or concealed; and if, after the cause of the action accrues, he depart from the state, or abscond or conceal himself, the time of his absence or concealment shall not be computed as any part of the period within which the action must be brought."

The case of *McElmoyle v. Cohen* was taken to the supreme court, U. S., on a certificate of division of opinion of the U. S. circuit court in the state of Georgia. Justice Wayne said, as to the question, "Whether the statute of limitations of Georgia could be pleaded to an action in that state, founded upon a judgment rendered in South Carolina, that the court entertained no doubt that it could. Though a judgment obtained in the court of a state is not to be regarded in the courts of her sister states as a foreign judgment or as merely *prima facie* evidence of a debt to sustain an action upon the judgment, it is to be considered only distinguishable from a foreign judgment in this, that by the first section of the fourth article of the constitution, and by the act of May 26, 1790, § 1, the judgment is a record, conclusive upon the merits, to which full faith and credit shall be given, when authenticated as the act of congress has prescribed." * * * "What faith and credit, then, is given in the states to the judgments of their courts? They are record evidence of a debt, or judgments of record, to be contested only in such way as judgments of record may be; and, consequently, are conclusive upon the defendant in every state, except for such causes

as would be sufficient to set aside the judgment in the courts of the state in which it was rendered." * * * " Such being the faith, credit, and effect to be given to a judgment of one state in another, by the constitution and the act of congress, the point under consideration will be determined by settling what is the nature of a plea of the statute of limitations. Is it a plea that settles the right of a party on a contract or judgment, or one that bars the remedy? Whatever diversity of opinion there may be among jurists upon this point, we think it well settled, to be a plea to the remedy; and consequently, that the *lex fori* must prevail. The statute of Georgia is, 'that actions of debt on judgments obtained in courts, other than the courts of this state, must be brought within five years after the judgment obtained.' It would be strange, if in the now well-understood rights of nations to organize their judicial tribunals, according to their notions of policy, it should be conceded to them in every other respect than that of prescribing the time within which suits shall be litigated in their courts. Prescription is a thing of policy, growing out of the experience of its necessity; and the time after which suits or actions shall be barred, has been, from a remote antiquity, fixed by every nation, in virtue of that sovereignty by which it exercises its legislation for all persons and property within its jurisdiction. This being the foundation of the right to pass statutes of prescription or limitation, may not our states, under our system, exercise this right in virtue of their sovereignty? Or is it to be conceded to them in every other particular than that of barring the remedy upon judgments of other states, by the lapse of time? The states use this right upon judgments rendered in their own courts; and the common law raises the presumption of the payment of a judgment after the lapse of twenty years. May they not, then, limit the time for remedies upon judgments of other states and alter the common law by statute, fixing a less or larger

time for such presumption, and altogether barring suits upon such judgments, if they shall not be brought within the time stated in the statute? It certainly will not be contended that judgment creditors of other states shall be put upon a better footing in regard to a state's right to legislate in this particular than the judgment creditors of the state in which the judgment was obtained. And if this right so exists, may it not be so exercised, by the states restraining the remedy upon the judgment of another state, leaving those of its own courts unaffected by a statute of limitations, but subject to the common law presumption of payment, after the lapse of twenty years? In other words, may not the law of a state fix different times for barring the remedy in a suit upon a judgment of another state and for those of its own tribunals? We use this mode of argument to show the unreasonableness of a contrary doctrine. But the point might have been shortly dismissed with this safe declaration, that there is no direct constitutional inhibition upon the states, nor any clause in the constitution from which it can be even plausibly inferred, that the states may not legislate upon the remedy in suits upon the judgments of other states, exclusive of all interference with their merits. It being settled that the statute of limitations may bar recoveries upon foreign judgments; that the effect intended to be given, under our constitution, to judgments is, that they are conclusive only as regards the merits; the common law principle then applies to suits upon them, that they must be brought within the period prescribed by the local law, the *lex fori*, or the suit will be barred."

The statute of Georgia, construed by the supreme court of the U. S., uses the language, "judgments obtained in courts other than the courts of this state," where the words of our statute are "foreign judgment;" and the court says though a judgment obtained in the courts of a state is not to be regarded in the courts of her sister states as a

foreign judgment, it is to be considered only distinguishable from such in this, that by the first section of the constitution, and by the act of 1790, "the judgment is a record conclusive upon the merits, to which full faith and credit shall be given."

Considering this language in connection with the tenor of the opinion quoted, especially the latter part, I understand it to mean that the judgment of a court of a sister state is not to be regarded as a foreign judgment in so far as the faith and credit to be given it by the courts of this state is concerned, but that so far as the application of statutes of limitation are concerned it is to be so regarded, and that while the language of our statute of limitations and that of the state of Georgia is different in form, the statutes, in substance and meaning, are the same.

As to the case cited of *Stockwell v. Coleman*, 10 Ohio St., 33, it is true that this language is used in the opinion, "that the judgment of a court in any other of the United States is not to be regarded in our courts as a foreign judgment," and gives as a reason that "under the provisions of the constitution, and the act of congress, such judgments and records must have 'full faith and credit,' the same force here as in the state where rendered."

This opinion of the law, as far as it goes, must be held as *obiter dicta* merely, as the statute of limitations of that state, which the court had under consideration, does not mention foreign judgments, nor does it refer to judgments of any kind, either foreign or domestic.

After a careful examination of these cases, as well as those of the *Bank of Alabama v. Dalton*, 9 Howard, 522; *Bacon v. Howard*, 20 Id., 22; and *Randolph v. King*, 2 Bond, 104 (cited in a note to *McElmoyle v. Cohen*), I remain of the opinion that, within the meaning and intent of our statute of limitations, the judgment sued on in this case is still a foreign judgment, and is so to be held.

The first point by the plaintiffs in error, in their original brief, is, that the verdict is not sustained by sufficient evidence. And first, as to the evidence upon the plea of the statute of limitations, to be here considered. The judgment, of this action, was rendered on the 26th day of March 1878. The petition seems to have been filed on the 7th day of April, 1884, but when the writ of summons was served and returned, which is the true date of the action, does not appear of record. It is shown from the examination of the defendant, J. D. Kilpatrick, that, in February, 1878, a month prior to the rendition of the judgment, he was residing in the city of Galveston, Texas, and on account of his health returned to this state, bringing his wife and child and all his personal effects; that he went to the house of his widowed mother in Gage county, with whom he formerly lived, taking up his residence there with his family. It appears that he had a considerable amount of personal property, which is characterized as chamber sets, *bric-a-brac*, etc., which was put up and used by the defendant and his family in the rooms which he took possession of at the old family homestead in Gage county. This occurred as early as the middle of the month of March, 1878. He made arrangements to build a house and to make other improvements on certain land, adjoining, which he had leased, or purchased, of the state. In the month of June, following, he had information from his brother, at Galveston, of certain business interests which induced him to go there and become interested in a contract for certain railroad work then in progress—leaving his family at the homestead in Gage county.

Sometime in the fall, following, his wife joined him at Galveston, leaving all their property in Gage county, and remained with her husband till May, 1879, when she returned, the defendant also returning a month later. Up to the time his wife joined him at Galveston, the defendant, and subsequently his wife, boarded there at a hotel. From

the time of his return to Gage county to August, 1879, the defendant was interested in a contract of the Union Pacific railroad from Marysville, Kansas, to Beatrice, Gage county, Nebraska, which was completed in the beginning of the next year, and during the greater portion of the time he boarded at a hotel in Beatrice, his family visiting him, a week or two at a time, from their residence at the farm or homestead mentioned. In the summer of 1880, he took a contract for extending a branch of the B. & M. railroad, living at the time with his family on the farm in Gage county. Afterwards he took a like contract, with the same company, in Pawnee county, boarding with a family in Pawnee City, his family, most of the time, living with him. In the fall of 1880 he was employed on the Denver extension of the B. & M. railroad in Colorado, which occupied him till March, 1882, his family remaining at their home in Gage county, which he returned to on various occasions. After this he took a contract on the Oregon Short Line railroad, in Oregon and Idaho territories, which was completed in September, 1883. After the commencement of this work his wife joined him at Ogden, Utah, and subsequently at Soda Springs, Idaho; but during all of this period the family residence was kept up and maintained as formerly in Gage county, Nebraska. On the completion of this contract, after some further work for the same company in Colorado, the defendant returned to Gage county, in the fall of 1883, and shortly afterwards bought and furnished a family residence in Beatrice, which he occupied continuously to the time of his examination in this suit. This evidence was corroborated in all of its important particulars by the testimony of Jennie J. Kilpatrick and Rachel Kilpatrick, wife and mother respectively of the defendant, and of R. J. Kilpatrick, Frederick Elwood, and O. M. Enlow, whose testimony is of record. Conceding that the evidence was, in some particulars, contradicted by adverse witnesses, I think without

doubt that the facts pleaded under the statute of limitations were sufficiently proved to sustain the verdict.

A sufficient pleading and proof that a claim in suit is barred by the statute of limitations logically precludes the further inquiry into the legal existence and justice of such claim. Therefore, while it would not be uninteresting to examine the evidence on either side as to the payment and satisfaction of the Texas judgment by the quit-claim deed alleged to have been given of the hotel property in Galveston, as well also to consider other points presented, whether the exceptions of the plaintiffs in error could, in any event, be applied to the special findings of the jury, and the judgment thereon, I am yet admonished by the pressing judicial duties of the court, and the near approach of the coming term, that there is no time to be spared to gratuitous discussion of abstract inquiries.

There seems, however, certain points that may be considered. The plaintiffs complain that the court erred in refusing to give the 3d, 5th, 8th, and 9th instructions requested.

The 3d one reads: "The jury are instructed that, if you find from the evidence in this cause that defendant, Kilpatrick, had not resided and had his usual place of residence in the state of Nebraska for five full years prior to the commencement of this action, so that service of summons could be had either upon him personally or by leaving a copy of the summons at his usual place of residence, they must find for the plaintiff."

This point is answered sufficiently by reference to the finding of the jury to the third special question, which was the independent fact that the defendant had an usual place of residence within this state from the 26th day of March, 1878, to the 7th day of April, 1884, for a full period of five years, so that if it be conceded that this instruction, which counsel assert was sent in to the jury marked *refused*, correctly states the law applicable to that question, and that the law was not sufficiently given to the

jury in other instructions, even then it is not perceived that the refusal could have prejudiced the plaintiffs. Let us for a moot argument suppose it to have been given, and by that influence the jury had found their general verdict for the plaintiffs. Under the statute the special finding of fact as stated would necessarily have controlled the judgment and left the plaintiffs without remedy.

The fifth instruction refused reads : "The court instructs the jury that the burden of proving payment or satisfaction of the judgment in question is upon the defendant, and he must establish the alleged satisfaction by a clear preponderance of the evidence."

This was properly refused under the authority of the rule in *Search v. Miller*, 9 Neb., 26, cited by counsel for defendant in error, " That in a civil action a preponderance of evidence is all that is required to sustain the claim of a party to the action." The court therefore properly refused to charge the jury that a *clear* preponderance of the evidence was required of the party on whom rested the burden of proof.

The next instruction refused is the eighth. It reads :

" The court instructs the jury that the contract between Marx & Kempner and R. J. Kilpatrick and S. M. Fields is not material to the issues in this case, and in considering of your verdict, you will not take said contract into consideration."

Without discussing this point, the error in refusing the instruction, as to the contract mentioned, is not obvious. The contract was not set up in the pleadings, but is attached as an exhibit to the bill of exceptions. How and for what purpose it was intended, does not appear. In no event is it supposed to influence the question of the defendant's continuous residence in Gage county as not to entitle him to the benefit of the statute pleaded.

The refusal of the *ninth* is not argued nor complained of in the brief of counsel, and will not be further considered.

The fifth assignment of error is based on the *second* instruction to the jury asked by defendant.

2.   The court further instructs the jury that the mere temporary absence of a debtor from the state, when such debtor has a usual place of residence therein, where service of summons can be had upon him, does not suspend the statute of limitations, and in this case, if the jury believe from the evidence that the defendant, J. D. Kilpatrick, had a usual place of residence in the state of Nebraska for the period of five years next after plaintiff's action accrued, then any mere temporary absence of the said J. D. Kilpatrick from said state of Nebraska, upon business, will not suspend the statute of limitations."

The former observations as to the refusal of defendant's *third* instruction, apply equally to the exceptions taken to the giving of the second.   Both were attempts by the respective parties to have a construction by the court of the law of residence in its application to the statute of limitations.

The object was met, in my opinion, by the special finding of the jury.

The seventh, eighth, and ninth assignments are based upon the alleged errors of the court in submitting special inquiries 1, 2, 3 to the jury.

Section 293 of the code provides, " In every action for the recovery of money only, or specific real property, the jury, in their discretion, may render a general or special verdict.   In all other cases the court may direct the jury to find a special verdict, in writing, upon all or any of the issues; and in all cases may instruct them, if they render a general verdict, to find upon particular questions of fact to be stated in writing, and may direct a written finding thereon.   The special verdict or finding must be filed with the clerk and entered on the journal."

It will be seen from the language of the section that the jury not only in this case might in their discretion render a special or general verdict, but that in all cases the court

may direct the jury to find a special verdict upon all or any of the issues in the case. So that I can conceive of no case in which it will be error *per se* in the court to submit proper inquiries to the jury for special findings of fact. And the plaintiff's brief fails to call our attention to any view of the case in which they were or could have been prejudiced by the submission of special findings.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.