WILLIAM B. WHITNEY, APPELLEE, v. AMOS S. WYATT ET AL., APPELLANTS.

FILED DECEMBER 7, 1923.   No. 22594.

1. Ejectment. Where a party is occupying the land of another to the latter's exclusion, the latter may bring ejectment without submitting the controversy to the state surveyor and draughts-man under section 4870, Comp. St. 1922.

2. Evidence. In a civil case, a preponderance of evidence is gen-erally all that is required to sustain the claim of a party.

3. Ejectment. PROOF. "Where, in an action in ejectment, the plain-tiff's chain of paper title does not reach back to the sovereign,

or to a common source from which both parties claim, he must
prove that he, or at least one of the grantors in his chain of
title, had at some time been in possession of the premises before
he can recover." *Runkle v. Welty*, 78 Neb. 574.

APPEAL from the district court for Furnas county:
CHARLES E. ELDRED, JUDGE. *Reversed.*

*Lambe & Butler* and *Walter D. James,* for appellants.

*Stevens & Stevens, contra.*

Heard before MORRISSEY, C. J. LETTON and GOOD, JJ.,
SHEPHERD, District Judge.

SHEPHERD, District Judge.

Whitney, the appellee, brought this action in ejectment
against Wyatt, appellant, in the district court for Furnas
county, claiming that the latter was upon his land, and
praying for his ejectment. Issue was joined and the case
was tried to a jury, resulting in a verdict for the appellee
upon which judgment was entered. The lots of the parties
joined; the appellant's lying upon the east and the appellee's
upon the west. According to their deeds, the appellee's east
line is appellant's west line, and runs north and south
through a point 33 rods east of the quarter corner common
to sections 17 and 18 in or near Beaver City. Appellee
bought his lot in 1887 and has lived upon the same ever
since. Wyatt bought his in 1909 from the administrator
of the estate of one Boseley who succeeded Mr. Bowsman
in its ownership. There is evidence that Bowsman sowed
the Wyatt lot to cane and ran a one wire fence around it
extending north and south 14 feet and 8 inches west of
the true line above described. But there is nothing in the
record to clearly indicate when this was done. It seems that
the appellee joined in paying for another fence subsequently
built in the same place, though he may not have known that
the same was not on the true line. The county surveyor
testified that Boseley employed him to run the true line, and
that he did so, finding it to be 14 feet and 8 inches east of

the said fence, and calling Boseley's attention to the fact.
Afterward the surveyor told the appellee, and shortly fol-
lowing the latter informed Wyatt who had gone into pos-
session under his purchase from the administrator.   There-
after the appellee planted cherry trees on the disputed strip
(this was in 1915), and has watered and cultivated them
ever since.   He also paid for a permanent sidewalk to the
point located by the surveyor on the true line.

On the other hand, it was shown upon trial that he not
only helped to maintain the described fence, but that he at
one time planted an elm tree at the end of the same, and
at another time obtained permission from the owner of the
Wyatt tract to let the fence down at a convenient point in
order that he might get through with coal to his house.
There are other circumstances militating for and against
the appellee, and considerable conflicting testimony as to
what was said and done between the parties from time to
time.   In a conversation between the parties in 1920 the
appellant told the appellee that if he wanted to have the
strip in question he would have to sue for it.   This the ap-
pellee contends was the first notice he had from the appel-
lant of any adverse holding of the strip in question.

The assignments of error are ten in number.   Eight, nine
and ten, being general assignments that the verdict is con-
trary to the law and to the evidence and that the court erred.
in overruling the motion for new trial, will not be discussed,
as their determination is involved in the consideration of
other specific assignments.

In appellant's seventh assignment he asserts that the
evidence is insufficient to support the verdict, because it
was disclosed upon trial that this is a boundary line dispute,
and that there was no reference of the same to the state
surveyor and draughtsman as required by section 4870,
Comp. St. 1922.   But this statute is permissive, not manda-
tory.   *Reed v. Wellman,* 110 Neb. 166.   Moreover, there was
no dispute in regard to the survey or in regard to the actual
location of the true line.

Appellant's fifth assignment of error is well supported

by law. The trial court in its third instruction required the defendant to establish its defense of adverse possession by clear and affirmative proof. This was requiring more than a preponderance of the evidence, and was consequently erroneous. Not only that, but it appears to us as prejudicially erroneous and such as to necessitate a reversal. It has been so held. In a civil action a preponderance of the evidence is generally all that is required to sustain the claim of a party. *Search v. Miller,* 9 Neb. 26; *McCord-Brady Co. v. Moneyhan,* 59 Neb. 593; *Marx & Kempner v. Kilpatrick,* 25 Neb. 107. This is the rule applying here.

A further contention of the appellant looks to a final disposition of the case in this court by direction to the district court to dismiss. In addition to general complaint that the trial court erred in refusing to direct for appellant, it is insisted in assignments of error one, two, three and four that, since the evidence of the appellee affirmatively showed that the appellant was in adverse possession at the time of the commencement of the action, and for some time theretofore, and since the appellee did not upon trial prove his paper title back to the government or to a common source, or prove that he or some of his grantors had been in possession of the disputed premises, he was totally without ground of recovery. And it is further insisted that this court should now do what the trial court refused to do, *i. e.,* find and direct for the appellant. In the main this contention is based upon the following testimony of the appellee brought out in cross-examination.

"Q. Now, when was the first fence built between your property and the property on the east now owned by Mr. Wyatt, if you remember? A. I cannot tell you, Mr. Lambe. Q. Was there a fence built there prior to the Boseley fence? A. That is the present fence? Q. Yes. A. There was a fence of, I think, only one wire; and I think it was around the entire tract that Mr. Wyatt owns, and came up to where this present fence is, as nearly as I remember now. Q. How long had that fence been there? A. Oh, I don't know; it was there when Mr. Boseley bought it from Mr. Bowsman; I

am not able to say whether Mr. Bowsman put it up, or whether he purchased it. Q. 167. At that time you recognized that fence on the line? A. I don't know how to answer that; I had always supposed that to be my line when I bought the property. Q. And did you not set trees out on your place with reference to this fence being the true line? A. Well, I expect likely I did; I do not know whether they had any real reference to that, except at the south end I set an elm tree, and that elm tree is directly in that fence, and it is directly in line with the produced line of what I supposed was my east line. Q. How long would you say that fence was there prior to the Boseley fence? A. I have no idea whatever; I think it might have been there three or four years. Q. You came there in 1887? A. Possibly it was there longer; I don't know. Q. You did not know Mr. Bowsman? A. No; I don't think it was there that long, because I remember distinctly that Mr. Bowsman sowed that ground, possibly not, or another piece, to cane one year; and whether he owned it more than two summers I could not say; but when it was in cane it was inclosed in that fence; now, that is as far as I can tell you about that fence."

There is nothing in the record to show when Boseley bought or when Bowsman bought the Wyatt lot, but counsel for appellant conclude from the above testimony that the fence was where it now is when Whitney bought in 1887. This inference may be fairly drawn from a reading of the testimony quoted, but it is by no means conclusive. It may be argued that appellee's answer to question 167 has reference to the line, rather than to the existence of the fence. At all events however, it is clear that from 1887 he supposed that his line was just where the fence now stands. So his understanding continued until the news of Boseley's survey reached him after the latter's death. In the interim he planted the elm to mark the line. Not in a single instance does it appear that he ever passed the fence line or set foot on the disputed strip until Boseley died and the surveyor informed him. But, conceding all this, there is no satisfactory evidence that Boseley held adversely. The

Whitney v. Wyatt.

fact that he employed the surveyor to find the corner indicates that he was looking for the true line, and not disputing that that was the boundary of his holding.  If it were certain that the fence was there from the time of appellee's purchase of his lot, the fact would be greatly persuasive that the holding of Boseley and his predecessor was adverse.  But while it is clear that the fence was built several years before 1909, it is not at all clear that it was there any longer.  If the holding of Boseley was not adverse, the title of the appellant had not ripened by adverse possession when appellee began his action, for his holding had been interrupted by entry on the part of the appellee.  Nor can it be absolutely said that the appellee had not been in possession of the strip, because his going upon the same to plant and to cultivate, as well as to survey, is an indication to the contrary.

It is, as appellant says in his brief, established in this state that, "Where, in an action in ejectment, the plaintiff's chain of paper title does not reach back to the sovereign, or to a common source from which both parties claim, he must prove that he, or at least one of the grantors in his chain of title, had at some time been in possession of the premises before he can recover." *Runkle v. Welty*, 78 Neb. 574.  But the facts are not such as to permit us to apply the rule and direct a reversal, because, as we have stated, it is not clear when the original fence was built, and not clear that the holding of the appellant and his predecessors, prior to 1920, was adverse.  On the other hand, the testimony shows, or tends to show, that the appellee entered and held possession after Wyatt's purchase and before the commencement of this suit.  This was a matter to be determined by the jury, and the court did not err in submitting it.  In so determining, we have taken appellant's argument upon the law for granted and it will not be necessary to discuss the cases cited.

The judgment of the district court is reversed, and the cause remanded for a new trial.

REVERSED.