IN RE ESTATE OF ELMER DRAKE, ALSO KNOWN AS FRANK ELMER DRAKE, DECEASED. CARRIE I. WASHINGTON, APPELLANT, V. MINNIE M. DRAKE ET AL., APPELLEES.

35 N. W. 2d 417

Filed December 29, 1948. No. 32477.

*William L. Walker, Leonard Dunker,* and *Earl Ludlam,* for appellant.

*Colfer, Russell & Colfer* and *Charles E. McCarl,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

YEAGER, J.

This action was originally instituted in the county court of Red Willow County, Nebraska, by petition of Carrie I. Washington to have probated what she claimed was the last will and testament of Frank Elmer Drake, deceased. This full name was not used in the will, the petition for probate, and the objections. Therein he was referred to as Elmer Drake. Minnie M. Drake and Marjorie Drake Olson, widow and daughter respectively of Frank Elmer Drake, were contestants and objectors to the probate of the alleged will. Probate was denied by the judgment of the county court. From the judgment of the county court Carrie I. Washington appealed to the district court. On the appeal by her petition she was denominated proponent and plaintiff and Minnie M. Drake and Marjorie Drake Olson were denominated contestants and defendants. The parties will be referred to herein as plaintiff and defendants.

A trial was had to a jury in the district court on issues joined. The jury returned a verdict denying probate of the alleged will. Judgment was entered on the verdict. Plaintiff filed motion for judgment notwithstanding the verdict or for a new trial, which motion was overruled. From the judgment and the order overruling the motion plaintiff has appealed.

Certain factual background concerning which there is no dispute is substantially the following: Frank Elmer Drake, the deceased, and Minnie M. Drake, defendant, were married in 1905 and remained husband and wife until June 4, 1947, when Frank Elmer Drake died as the result of injuries sustained on June 1, 1947. The defendant Marjorie Drake Olson is their daughter and only child. Carrie I. Washington is a sister of the de-

ceased as is also one Olive M. Berkeybile. The mother of the deceased lived until 1941. In 1934 the plaintiff, Olive M. Berkeybile, and the mother of deceased lived in or in the vicinity of Manhattan, Kansas. In 1934 the deceased, who then and at all times thereafter lived at McCook, Nebraska, made a will in duplicate, that is two identical copies were 'made and both were fully executed in due form of law. One was retained by the deceased and the other sent to the plaintiff. The one which was retained by deceased apparently was never seen by anyone except the deceased after it was taken by deceased from the office of the scrivener on the day it was executed.. At least there is no evidence that anyone saw it thereafter. Information never came to either of the defendants that deceased had ever made a will until after his death.

The duplicate appears to have been mailed to plaintiff on June 20, 1934. In what has been identified as an accompanying letter deceased stated that the retained copy was in his safe in his store in McCook, Nebraska. In the letter, referring to the will, it is stated: "Tom knoes where it is." The existence of the will was known to the two sisters of the deceased, his mother, and the husband of plaintiff. Apparently the first information that defendants had of the existence of the will came through Charles E. McCarl, an attorney at McCook, Nebraska.

After the execution of the will it was apparently discussed or at least mentioned among deceased, the plaintiff, the sister, the mother, and the husband of plaintiff but never after February 1943. There is no evidence of the whereabouts or existence of the retained copy of the will after that date.

It may be well to state here that no question is raised either as to the authenticity of the copy of the will offered for probate or as to the fact that at the time of its execution there were two copies, one of which was retained by the deceased.

By the terms of the will provision was made for payment of debts and funeral expenses and in it was designated place of burial which was Manhattan, Kansas. Provision was made that the widow should receive substantially what she would receive in case of intestacy. A bequest of $500 was made to one Thomas Rowland. Marjorie Drake Olson was specifically excluded from participation. The plaintiff herein was made the legatee and devisee of the rest, residue, and remainder of the estate.

By petition dated July 25, 1947, the plaintiff offered for probate in the county court of Red Willow County, Nebraska, the instrument in her hands as the last will and testament of Frank Elmer Drake. Prior thereto the defendant Minnie M. Drake had been appointed and had qualified as administratrix of the estate as an intestate estate.

To the petition objections were filed by the defendant Minnie M. Drake. The objections were dated August 30, 1947. The defendant Marjorie Drake Olson filed objections dated October 15, 1947. The objections of the two defendants are in terms and substance substantially the same.

Substantially it was alleged in the objections that the instrument offered for probate was not the last will and testament of Frank Elmer Drake; that the instrument offered was a copy of a purported last will and testament; that diligent search had been made for the copy retained by deceased and it could not be found; that conditions had changed since the time of the execution of the will in duplicate and that it was the belief of the defendants that the will had been destroyed by deceased with intent to revoke the same; and that subsequent to the time of the execution of the purported will and up to the time of his death deceased manifested by acts and declarations that he had no last will and testament.

For answer and reply to the objections plaintiff denied

the destruction and revocation asserted by defendants and reasserted her contention that the instrument offered for probate was the last will and testament of Frank Elmer Drake.

It was on a trial of the issues thus made that the county court denied probate of the instrument.

These were the issues presented by appropriate pleadings to the district court on appeal where as pointed out probate was denied by verdict of a jury.

The theory on which the case was presented both by plaintiff and defendants was that here was a will made in duplicate with the one retained by the testator not found or accounted for, therefore there was a presumption that the will had been destroyed by the maker with intention to revoke and the burden was on the proponent to overcome the presumption by evidence tending to a contrary conclusion.

The theory thus adopted by the parties is well stated in 68 C. J., Wills, § 759, p. 994, as follows: "Where one copy of a will executed in duplicate or triplicate, or the like, is shown to have been retained by the testator, the other or others having been intrusted to, or deposited with, another person, or other persons, the failure to find the testator's copy, after his death, raises a presumption of its destruction by him with the intention of revoking the will, although such presumption may be overcome by evidence tending to a contrary conclusion."

In 1 Underhill on the Law of Wills, § 261, p. 356, it is stated: "If the testator has retained one copy, placing another in the hands of another person; and if the copy, which it is shown he had never parted with, cannot be found upon his death, or if, when it is found, it is torn or canceled, the presumption is that the will is wholly revoked, even though a duplicate is produced intact." See, also, Bates's Estate, 286 Pa. 583, 134 A. 513, 48 A. L. R. 294; In re Estate of Crosby, 126 Neb. 509, 253 N. W. 652; In re Estate of Kane, 109 Neb. 449, 191 N. W. 680.

No assignment of error is predicated upon a misunderstanding or departure from this rule. The claim in this connection is that the court in its instructions misdirected the jury as to the burden the proponent was required to assume to rebut or overcome the presumption of revocation and to cause admission of the will to probate.

Plaintiff says the court charged that it devolved upon the proponent to overcome by clear, satisfactory, and convincing evidence the presumption that the deceased had destroyed the original will with the intention of revoking it, that is, not necessarily by the greater number of witnesses, but by such evidence which, on the whole, when fully, fairly, and impartially considered by the jury, would produce on the minds of the jurors such a strong impression that men of ordinary reason could not draw a different conclusion therefrom. She says that the instructions in this respect were erroneous in that an improper burden was thus imposed. She contends that her burden in the premises was only to rebut and overcome the presumption and to prove the will by a preponderance of the evidence. She asserts that this being a civil action she, having the affirmative of the issues involved, was required to sustain her contentions only by a preponderance of the evidence.

That this is a civil action there can be no question. Also the general rule in this respect in civil actions is that the party having the affirmative of an issue is required to sustain his or her position by a preponderance of the evidence. Marx & Kempner v. Kilpatrick, 25 Neb. 107, 41 N. W. 111; McCoy v. Conrad, 64 Neb. 150, 89 N. W. 665; Murray v. Burd, 65 Neb. 427, 91 N. W. 278; Estate of Davidson v. Davidson, 70 Neb. 584, 97 N. W. 797; In re Estate of Johnson, 100 Neb. 791, 161 N. W. 429; Whitney v. Wyatt, 111 Neb. 328, 196 N. W. 322; Weiner v. Aetna Ins. Co., 127 Neb. 572, 256 N. W. 71, on rehearing, 128 Neb. 575, 259 N. W. 507; Ralston Purina Co. v. Cox, 141 Neb. 432, 3 N. W. 2d 748.

The decisions of this court and courts of other jurisdictions either do or appear to impose a higher burden upon a proponent·of a lost will or one where a duplicate in the hands of a testator has been lost to overcome the presumption of revocation than that of a preponderance of the evidence. The same is true of the statements found in authoritative texts.

In 2 Page on Wills (Lifetime Ed.), § 876, p. 729, the following appears: "It is said that the evidence which rebuts such presumption must be clear and satisfactory, or that it must exclude every presumption of revocation by the testator."

In 68 C. J., Wills, § 814, p. 1029, it is said: "However, where the will was last seen or heard of in the possession or custody of the testator and it cannot be found after his death, it is presumed that he destroyed it with the intention of revoking it, and clear and satisfactory proof is required to rebut or overcome the presumption."

In Dalbey's Estate, 326 Pa. 285, 192 A. 129, it was said: "The evidence required to overcome the presumption of revocation of a lost will must be positive, clear and satisfactory."

In In re Calef, 109 N. J. Eq. 181, 156 A. 475, it was said: "The rule of law with which we are most concerned is succinctly stated by Vice-Chancellor Reed in In re Willitt's Estate, *supra* (46 A. 519), as follows: 'The rule of evidence controlling the probate of a lost or destroyed will is that the existence of a duly executed will, and its contents, must be proved with clearness and certainty.' * * * The presumption is one of law in some jurisdictions * * * and of fact in others."

In Thomas v. Thomas, 129 Iowa 159, 105 N. W. 403, it was said: "It appearing that a will, conceded to have been executed, cannot be found after the death of the testator, the presumption arises that the same was destroyed by him animo revocandi. And the burden is upon the party seeking to establish the will to over-

come such presumption by evidence strong, positive, and free from doubt." The necessity that the proof should be free from doubt however was later rejected in Goodale v. Murray, 227 Iowa 843, 289 N. W. 450, 126 A. L. R. 1121.

In the opinion in Goodale v. Murray, *supra,* it is said: "It has been the uniform holding of this court, and of courts generally, that to establish a lost will, it is incumbent upon the proponent to prove by clear, satisfactory and convincing testimony, first, the due execution and existence of the instrument; second, that it has been lost, and could not be found, though diligent search was made in all places where there was a reasonable likelihood of its being found, with testimony of the nature of the search, and the places searched; third, that the presumption of its destruction by the testator with the intention to revoke it, arising from its absence on his death, has been rebutted; and, fourth, the contents or provisions of the will."

In Williams v. Miles, 68 Neb. 463, 94 N. W. 705, 62 L. R. A. 383, 110 Am. S. R. 431, it was said: "Where parol evidence is relied on to show that a will in existence was revoked by implication by one which can not be found, such evidence should be clear, unequivocal, and convincing, * * *." This principle was approved in Williams v. Miles, 87 Neb. 455, 127 N. W. 904.

The purpose of the litigation in these two Nebraska cases and others reported in a series bearing the same title was not to prove the execution and existence of a lost will for probate but for the purpose of showing that an earlier will had been revoked by the lost will. The purpose of the quotation was nevertheless to define the character and quality of evidence necessary to rebut the presumption that a will left in the hands of a testator and not found after his death had been revoked. Thus interpreted this court in that case, we think, committed this jurisdiction to the rule that the evidence required to overcome the presumption of revocation of a lost

will must be clear, unequivocal, and convincing.

There can be no doubt that the Iowa cases do fix upon proponents of lost wills such as in the case at bar a burden in all respects greater than proof by a preponderance of the evidence. There can be no doubt that decisions of other jurisdictions do or tend to do so. It cannot be said however that this jurisdiction and some of the others clearly so do.

It will be observed from the quotations regarding this subject that the reference is to *the quality of evidence necessary to overcome the presumption of revocation* rather than *the quantum of proof necessary to admit a will to probate.* We think this has significance.

We are persuaded that this court did not intend to make the preponderance rule of civil actions inapplicable to this type of case, and establish and impose a different burden upon a proponent of a lost will.

We are persuaded that it was the purpose to require in the first instance that the proponent adduce evidence which is clear, unequivocal, and sufficient in and of itself or prima facie, if believed, to convince in order to overcome the presumption of revocation, and if there is an issue as to execution and existence to establish that fact, whereupon for the purposes of the case the presumption would disappear. The sufficiency of the evidence in the first instance becomes a matter for determination by the court.

After a determination in this respect favorable to the proponent reasonably and logically the burden would be on the proponent to sustain his right to have the will admitted to probate by a preponderance of all of the evidence with the jury left free to weigh it and apply it to all elements involved and to give to it such weight as they should deem it to be entitled.

This reasoning is consistent with the preponderance rule in civil cases, also a well-recognized rule as to the office and weight of presumptions, and at least one other situation wherein the decisions apparently but not ac-

tually imposed in a type of civil action a burden of proof greater than by preponderance of the evidence.

It is well established in this jurisdiction that a presumption is not evidence but it may take the place of evidence unless and until evidence appears to overcome or rebut it, and when evidence sufficient in quality appears to rebut it the presumption disappears and thereafter the determination of the issues depends upon the evidence with the requirement as in other civil actions that the party having the affirmative of the issue involved in order to succeed shall sustain his position by a preponderance of the evidence. 1 Jones, Commentaries on Evidence (2d ed.), § 30, p. 57; In re Estate of Kajewski, 134 Neb. 485, 279 N. W. 185; Bohmont v. Moore, 138 Neb. 784, 295 N. W. 419, 133 A. L. R. 270; In re Estate of Goist, 146 Neb. 1, 18 N. W. 2d 513.

The case of Riley v. Riley, ante p. 176, 33 N. W. 2d 525, was not a case where the matter of evidence to overcome or rebut a presumption was involved but one wherein this court was called upon to define the significance to be attached to evidence which in the first instance was required to be "clear, satisfactory, and unequivocal." In defining the significance to be attached it was said:

"The rule is not one of weight but of quality and substance of evidence. It means that when he has done this, in the absence of anything to the contrary, his burden in this respect has been sustained.

"If however its weight is brought into question then before he shall be entitled to have his position sustained he, having the affirmative, must sustain it by a preponderance of the evidence."

Any significance to be attached to the words "clear, satisfactory, and unequivocal" other than the one pointed out herein would destroy the traditional burden of proof in civil actions and substitute in its stead a burden as uncertain and indefinite as the uncertainty and indefiniteness which inheres in the words themselves. We

conclude therefore that the instructions of the court, in the respects herein pointed out, were erroneous, however, the error was without prejudice since from an examination of the evidence it becomes clear that the verdict was the only one which was or could have been justified. Clearly on the evidence the defendants were entitled to a directed verdict in their behalf. In a case where the verdict is the only one which the evidence or lack of evidence will support the giving of erroneous instructions will not be held to be prejudicial error. Lebs v. Mutual Benefit Health & Accident Ass'n, 124 Neb. 491, 247 N. W. 19.

There is no direct evidence or other evidence from which a reasonable inference could be drawn the purport or effect of which was to overcome or rebut the presumption that the will had been revoked.

The facts in this connection as disclosed by the record which were adduced by the plaintiff have already been summarized and they will not be repeated. Suffice it to say here that no evidence was adduced as to the place of repose of the retained duplicate of the will except that contained in the letter of transmittal of the other copy in 1934. No evidence of its existence thereafter was adduced except indefinite references to it in conversations by deceased with his mother, his two sisters, and his brother-in-law prior to 1943. There was no evidence that anyone other than the deceased, the scrivener, the attesting witnesses, the mother, the two sisters, and the brother-in-law knew of the will until the duplicate was offered for probate by the plaintiff.

In the light of this state of the record it cannot well be said that the plaintiff adduced evidence of the quality sufficient to overcome the presumption that the will had been revoked by the testator.

An error assigned is that the district court erred in refusing to strike the objections and answer of the defendant Minnie M. Drake. The theory of the motion was that since the will gave her, as widow of the testator,

what she would have received in case of intestacy she was not an interested party within the meaning of section 30-217, R. S. 1943. The contention is without merit.

The pertinent part of the provision of the statute is as follows: "When any will shall have been delivered into or deposited in any probate court having jurisdiction of the same, together with a petition for its probate, such court shall appoint a time and place for proving it, when all concerned may appear and contest the probate of the will, * * *."

This court in the case of In re Estate of Sexton, 146 Neb. 618, 20 N. W. 2d 871, interpreted this provision and there declared that anyone who is or claims to be an heir of a deceased person or otherwise interested in the estate is entitled to contest the probate of a will.

It is pointed out in Salmons v. Salmons, 142 Neb. 66, 5 N. W. 2d 123, and sustained in Salmons v. Salmons, 142 Neb. 74, 8 N. W. 2d 517, that since 1907 a surviving spouse becomes an heir as to both the personal property and real estate of the deceased husband or wife.

Under the interpretation made in In re Estate of Sexton, *supra,* from which we are unwilling to depart, the defendant Minnie M. Drake, as an heir, had full right under the statute to contest any purported will of her deceased husband offered for probate.

The judgment of the district court is affirmed.

AFFIRMED.