JOHN P. JOHNSTON, APPELLANT, v. CECIL O. L. JOHNSTON, APPELLEE.

51 N. W. 2d 332

Filed February 1, 1952.   No. 33063.

*Jay P. Gibbs* and *John A. McKenzie,* for appellant.

*Gray & Brumbaugh,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

In this action plaintiff sought to have a deed declared

null and void, to quiet the title in him to two certain pieces of real estate, and to decree that defendant had no right, title, or interest in personal property purportedly conveyed in a bill of sale by plaintiff to defendant. The action is one based on alleged fraud of the defendant. Issues were made and trial was had resulting in a decree dismissing plaintiff's petition and holding that the deed and bill of sale were in all respects valid, subject to the terms of a condition to which reference will hereinafter be made. Plaintiff appeals. We affirm the decree of the trial court.

Plaintiff and defendant are father and son. Reference will be made herein to a lady who at the inception of this controversy was named Dolly Powell and later became the wife of the plaintiff. For convenience she will be referred to herein as Dolly, that being the name often used in the evidence.

Before undertaking to summarize the pleadings as to the issues presented, we state the fact situations about which there appears to be no material dispute in the pleadings and evidence.

Plaintiff was a man 81 years of age at the time of trial. The defendant, his only son, was 55 years of age at the time of trial. Plaintiff and defendant's mother were married in 1893. Plaintiff and defendant are chiropractors by profession. The mother was also a chiropractor. Plaintiff and defendant's mother began the practice of their profession in Omaha some 35 years ago and continued the practice thereafter in Omaha.

In 1916, the first piece of real estate involved in this action was bought, title being taken in the name of the plaintiff. We refer to it as the Locust Street property. In 1941, the title to this property was conveyed to plaintiff and the mother as joint tenants with right of survivorship. It appears that this property later was sold under contract and that that contract was not fully performed when this controversy arose.

The second and more valuable piece of property in-

volved here was purchased in 1925. We refer to it as the Poppleton Avenue property. Title was taken in the names of plaintiff and the mother as joint tenants with right of survivorship. The mother died in May 1948. Upon her death title to both pieces of real estate vested in the plaintiff without probate proceedings. For several years plaintiff and the mother officed and lived in this property.

The defendant practiced his profession at various places. At times he was with plaintiff and the mother. In 1948, he was at St. Louis, Missouri. He came to Omaha and assisted plaintiff and the mother during her last illness. Thereafter plaintiff and defendant went to Europe and on their return defendant entered the practice with plaintiff. There is some contention as to whether or not a partnership existed. It is not material.

The Poppleton Avenue property was remodeled so as to provide basement offices for plaintiff and defendant. There the two parties lived and practiced their profession in a relationship that was close and cordial and one of mutual trust and confidence, both personally and professionally. They do not appear to have made with each other an exact accounting of income or expenses.

Dolly was a woman of mature years, employed in Omaha. For many years she had been a tenant in the Poppleton Avenue property. She continued as a tenant after the mother's death. Her relationship with the plaintiff, the defendant, and their families was cordial and friendly.

An attorney, Oscar Johnson, had his offices in his home, a block from the plaintiff's office and home. For 20 years the attorney had done plaintiff's legal work and advised him professionally. He handled the transfer of title of the Locust Street property from single to joint tenancy ownership. He also handled the sale of the Locust Street property for plaintiff, undertook to make collections due on that property, and after the

dispute here involved became acute he represented plaintiff and defendant in the foreclosure of the contract of sale on that property. The attorney was acquainted with the defendant but had never served him professionally.

In 1949, plaintiff and Dolly became engaged to marry. They made a trip to California. Relatives of Dolly suggested they be married there. Plaintiff expressed a desire to talk with the defendant about it. They returned to Nebraska. Defendant was advised of the proposed marriage. He made no objection. The marriage date was set for October 6, 1949, and the ceremony was performed on that evening.

On October 5, 1949, plaintiff signed and acknowledged a deed for the consideration of $1 and other valuable considerations conveying the two pieces of real estate to the defendant and himself. This deed is on a printed form entitled "Warranty Deed—Vesting Entire Title in Survivor." The defendant is named as the first of the two grantees. The deed contains in black-faced capital letters this language: "It being the intention of all parties hereto, that in the event of the death of either of said grantees, the entire fee simple title to the real estate described herein shall vest in the surviving grantee." In two places the words "joint tenants" appear in black-faced capital letters. The deed contains the usual covenants in the printed form. It was witnessed by and acknowledged before the attorney and recorded that day.

Likewise on the same day the plaintiff sold for the consideration of $1 and other valuable considerations "all goods, chattles (sic) and credits owned by me and in my possession located at 1146 South 32nd Street, and at 3202 Poppleton Avenue, Omaha, Nebraska." This instrument is a printed form entitled "Bill of Sale of Personal Property" and was witnessed by the attorney. It also was recorded.

It is against these two instruments that plaintiff directs this action.

Plaintiff alleged that he was engaged to marry Dolly and that they had agreed that in the event of the marriage he, plaintiff, was to "turn over" to Dolly certain bonds, securities, and other property which she was to accept in lieu of the statutory allowance in the event he predeceased her. Plaintiff alleged that on October 4, 1949, he advised defendant of the approaching marriage and agreement; that defendant advised plaintiff that such an agreement, to be valid, must be in writing; that defendant would have such an agreement prepared accomplishing the purpose of the agreement; and that under such an agreement plaintiff, although married, would be able to sell and dispose of his lands as though he were single.

Plaintiff further alleged that on the same day defendant advised plaintiff that he had had such papers prepared ready to be executed by plaintiff and Dolly; that plaintiff and defendant went to the office of the attorney above named; that certain instruments were presented to him for signature which he was told would accomplish the above purposes; and that plaintiff believed and relied on the statements made to him and signed the papers.

Plaintiff also alleged that the statements and representations were made for the purpose of cheating and defrauding him of his property and that he had a special trust and confidence in the defendant. Plaintiff alleged that he later learned that the instruments signed were the deed and bill of sale above mentioned; that he was paid no consideration therefor; and that when he learned of the fraud and deception that were practiced upon him, he demanded a reconveyance to him which defendant refused.

Plaintiff prayed that the deed be declared void as having been obtained by fraud, deceit, and deception; that the bill of sale be declared to be void; that title to the

real estate be quieted in him; and that defendant be adjudged to have no interest in the personal property.

Defendant filed an answer and cross-petition. During the trial the issues presented by the cross-petition and prayer for money judgment were withdrawn. Accordingly they need not be set out here.

Defendant by answer denied generally and alleged that the property involved herein was accumulated by the joint efforts of plaintiff and defendant's mother with the assistance of defendant and that there was an agreement and understanding that the property was to be defendant's on the death of the plaintiff, and alleged his version of the transaction which will be set out in discussing the evidence.

After trial, defendant, with consent, filed an amendment to his answer pleading waiver, laches, and estoppel. We do not deem it necessary to set out that pleading.

The court found generally in favor of the defendant on plaintiff's petition, made extended findings of fact, and decreed as first above stated.

The trial of this action consumed several days. The evidence is in irreconcilable conflict on certain material questions. There is much in the evidence that it seems to us is not very material to the decision here. There is much confusion in the evidence.

It appears that there was an oral prenuptial agreement between plaintiff and Dolly. The exact terms are not clear and it became confused as the trial progressed. It further appears, as plaintiff pleads, that the agreement was generally that Dolly should not receive any part of plaintiff's real estate in the event of the marriage and in the event of plaintiff's death before Dolly's death. The evidence indicates that they contemplated a reciprocal exchange of personal property, and in part that was done. It is also apparent that defendant knew of the proposed marriage and in general of the agreement.

In substance, plaintiff's testimony is that on the day

the instruments here involved were executed, defendant advised him that a prenuptial agreement, to be valid, must be in writing and duly executed by plaintiff and Dolly. Plaintiff testified that he told defendant to have the prenuptial agreement drawn and that defendant left for that purpose, returned in three-quarters of an hour, and advised plaintiff that attorney Johnson had the papers prepared. Thereafter plaintiff and defendant went to Johnson's office where plaintiff was presented with and signed the papers and was told that they carried out the agreement. Plaintiff testified that relying on defendant he signed without reading; that the deed was folded so only the signature space appeared; that he left and returned to his office immediately, defendant remaining behind, but catching up and returning to the office with him; and that the recited consideration in the instruments was not paid to him.

From defendant's evidence and that of the attorney, when integrated, it appears that defendant was walking past the attorney's home that noon when the attorney asked about the approaching marriage and inquired about the effect it would have on defendant; that defendant replied it would have none because of the prenuptial agreement; that the attorney told defendant such an agreement had to be in writing; that defendant went home and told the plaintiff of the attorney's statement; that the two then went to the attorney's office; that plaintiff there told the attorney of the agreement with Dolly stating that it involved all his property and asked that such an agreement be prepared; that the attorney advised plaintiff it was necessary that such an agreement be carefully prepared; that he did not have the time to prepare it before the wedding; that the attorney suggested the use of a survivorship deed; that the attorney explained the similarities and dissimilarities in the results that would follow; that the plaintiff said he knew of the operation of a survivorship deed and directed that one be drawn; that the attorney got the legal

description of the properties from his files, prepared the deed, and handed it to plaintiff who read it; that the plaintiff wanted the personal property in the deed but the attorney advised it should be in a bill of sale and one was prepared; that plaintiff signed both papers, and acknowledged the deed and directed their delivery and recording; that plaintiff then left; and that defendant remained while the attorney attached his seal and left, overtaking plaintiff on the way home and paying him the money considerations recited. The defendant then went down town and filed the instruments for recording.

It appears further that later the same day the attorney was advised of the possible completion of the sale of the Locust Street property and in order to enable him to close that transaction plaintiff and defendant executed a deed the next day to the proposed purchaser.

It also appears that either the night of the wedding or the next day or so, plaintiff saw the mention of the transfer in the papers. Plaintiff testified that he found it while looking for announcements of the wedding, and that he called it to the attention of defendant and defendant told him there must be a mistake. This latter statement defendant denies.

Some days later Dolly was advised by a third person that she had seen the notice in the papers, and asked plaintiff about it. Plaintiff investigated the records and said that he then discovered the nature of the instruments he had signed.

On November 1 and 3, 1949, plaintiff surrendered his government bonds and in part took cash and in part had new bonds issued payable to himself and Dolly— she being with him when this was done. There is evidence of a reciprocal transfer of insurance and annuities.

After Dolly knew of the deed and bill of sale the matter became the subject of discussion at different times, plaintiff demanding a reconveyance and Dolly offering

to sign any postnuptial agreement if the reconveyance was made.

Also during this period the attorney began a foreclosure action in the name of plaintiff and defendant on the contract of sale of the Locust Street property. This was with plaintiff's knowledge.

Christmas came with members of defendant's family in the home. In January the matter became acute and plaintiff insisted on a conference with the attorney and defendant. Plaintiff then accused them of fraud and deception. Defendant left the home, at the request of Dolly he said, which she denies. Defendant went to Hastings and engaged in the practice of his profession there. This action was filed April 27, 1950.

During this period and concluding in June 1950, plaintiff wrote the defendant friendly letters about patients, family, friends, etc. There is occasional mention in the letters of this controversy and of plaintiff's dissatisfaction as to what had been done. On June 7, 1950, plaintiff requested that no Father's Day greeting be sent and advised that he was sending back a present received earlier from defendant. In this letter he asserted that he had been defrauded and fooled by the attorney and defendant.

This cause is here as an equity case for trial de novo subject to the often-stated rule that in determining an appeal in equity involving questions of fact, this court is required to reach an independent conclusion without regard to the findings of the district court; yet in determining the weight of the credible evidence, where there is an irreconcilable conflict on a material issue, it will consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite. Smith v. Black, 143 Neb. 244, 9 N. W. 2d 193; Rettinger v. Pierpont, 145 Neb. 161, 15 N. W. 2d 393; Wiskocil v. Kliment, *ante* p. 103, 50 N. W. 2d 786. We resort to this rule only to reinforce our independent

conclusion that the weight of the credible evidence is with the defendant.

In addition there are circumstances shown in this record which negative plaintiff's contention that he believed he was signing a prenuptial agreement with Dolly. The testimony shows, and he pleads, that Dolly was to sign the agreement. Yet plaintiff signed; he did not require or ask Dolly to sign, nor did he tell her of the papers he signed. He quite clearly considered the matter as a completed transaction. Obviously he would not have done so if he then believed he was signing such an agreement as he now contends.

Also quite clearly plaintiff went to the attorney's office with the intention and purpose of executing an instrument in writing that would deny Dolly an inheritable interest in his property in the event the marriage was consummated and plaintiff predeceased her. The parties agree that the instruments which he executed have that effect. Plaintiff's complaint is as to the result following the deed which deprives him of a sole right to control and dispose of his property. And yet plaintiff knew of the effect of this sort of a deed; he and his first wife had used that sort of a deed; and plaintiff held title to the real estate as a result of the provisions of such deeds. That he had that understanding with reference to this transaction is demonstrated by his actions with regard to the Locust Street property immediately thereafter. Also, something of the pattern of joint tenancy is shown in the disposition of the bonds which plaintiff and Dolly made within a month following the marriage.

The rule also is: " 'Where it is sought to set aside a written instrument, and more especially one which has been executed with the formality of being signed in the presence of witnesses and acknowledged before a notary public, on account of fraud, the presumptions of validity and regularity attaching to such a document require clear and convincing evidence to preponderate against them. The formal instrument furnishes proof of the

most cogent and solemn character, and to outweigh this proof requires a greater quantum of evidence than in a case where there are no such presumptions to overcome. * * * ' " Neihart v. Ingraham, 140 Neb. 818, 2 N. W. 2d 28.

While adhering to this rule, we feel that in the interest of exactness and in accord with the reasoning of our recent decisions, the last clause should be changed to read, "and to outweigh this proof requires a higher quality of evidence than in a case where there are no such presumptions to overcome." In re Estate of Baker, 144 Neb. 797, 14 N. W. 2d 585, 155 A. L. R. 950; Riley v. Riley, 150 Neb. 176, 33 N. W. 2d 525; In re Estate of Drake, 150 Neb. 568, 35 N. W. 2d 417.

We reach the conclusion that plaintiff has not sustained his burden of proof and is not entitled to the relief prayed, and that the decree of the trial court should be affirmed as to the issues presented.

In reaching this conclusion we are not unmindful of the relationship of trust and confidence between the parties here. The rule as to that is: "In an action in which relief is sought on account of alleged fraud, the existence of a confidential or fiduciary relationship, or status of unequal footing, when shown, does not shift the position of the burden of proving all elements of the fraud alleged, but nevertheless may be sufficient to allow fraud to be found to have existed when in the absence of such a status it could not be so found, and thus to have the effect of placing the burden of going forward with the evidence upon the party charged with fraud." Leichner v. First Trust Co., 133 Neb. 170, 274 N. W. 475. The answer is that a finding of fraud is not sustained by this record.

Consistent with his answer, during the course of the trial defendant repeatedly stated that he did not desire the use of the personal or real property here involved or rents derived therefrom during the lifetime of the plaintiff. The trial court included that limitation

in its judgment. Defendant here asks that it be affirmed. On that basis this provision of the decree also is affirmed.

The decree of the trial court is affirmed.

AFFIRMED.